**John A. Cochran**, OSB No. 020022
**PACIFIC PROPERTY LAW LLC**
16811 Lakeridge Dr.
Lake Oswego, OR 97034
Phone: 503-756-0299
E-mail: johnpplllc@gmail.com

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON - PORTLAND**

| | |
|---|---|
| ASHRAF N. TADROS & SHAUN M. TADROS<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA NA; SPECIALIZED LOAN SERVICING, LLC; WILMINGTON TRUST, NATIONAL ASSOCIATION AS SUCCESSOR TRUSTEE TO CITIBANK, N.A.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.<br><br>Defendants. | CASE NO. 3:17-cv-01623<br><br>PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT; VIOLATION OF FDCPA 15 U.S.C. § 1692 *ET. SEQ. &* 15 USC 1641 Section 404<br><br>JURY TRIAL REQUESTED |

COMES NOW Plaintiff(s)/Plaintiff, Ashraf N. Tadros & Shaun M. Tadros, by and through Pacific Property Law LLC, hereby files this Complaint and states the following:

## I. NATURE OF THE ACTION

1.

Plaintiff executed a residential deed of trust for the property located at 4671 SW Trail Rd., Tualatin, OR 97062-7784 ("Property") for $570,000.00 on August 17, 2006. The Deed of Trust was recorded on August 25, 2006 in records of Clackamas County, Oregon at Recording No. 2006-078457. The original lender under the Deed of Trust was Countrywide Bank. The center of the dispute to this case is the illegal and invalid assignments starting with Countrywide and MERS shows Bank of America holding interest but assignments only show an assignment from MERS to



**PACIFIC PROPERTY LAW, LLC**
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

Citibank as Trustee for Bear Sterns Arm Trust, Series 2006-4 in December of 2011 and another transfer approximately 6 and ½ years later transferring interest from MERS to Wilmington Trust, N.A., as successor to Citibank, N.A. as Trustee of Bear Sterns Arm Trust, Series 2006-4. The first Assignment from MERS to Citibank as Trustee for BS Arm Trust is recorded on December 19, 2011 at Recording No. 2011-073042, attached as Exhibit 01. There subsequent assignment from MERS to Wilmington as Trustee for BS Arm Trust is recorded on June 05, 2017 at Recording No. 2017-037001, attached as Exhibit 02. It states it is to replace the 2011 assignment, however MERS would not been active that point and there was no way to legally effect that assignment as well as the fact that Bear Stearns trust was set up in 2006 and should have transferred out all assets by 2007 according to its own Pooling and Servicing Agreement. The MERS number and status would have been inactive at the time of the June 2017 transfer to the Wilmington Trust. The attached MERS printout would show the MIN status as Inactive and the Investor is listed as Citibank which would predate this last assignment to Wilmington, attached as Exhibit 03.

2.

Defendant Citibank N.A., as Trustee for the Holders of the SAMI II Inc., Bear Stearns ARM Trust, Mortgage Pass-Through Certificates, Series 2006-4 (hereinafter "CITIBANK BS ARM TRUST") is an enterprise formed as a trust organized under the laws of New York, its Trustee is at 9062 Old Annapolis Rd., Columbia, MD 21045. Defendant Wilmington Trust, N.A., as successor Trustee to Citibank, N.A. as Trustee of SAMI II Inc., Bear Stearns ARM Trust, Mortgage Pass-Through Certificates, Series 2006-4 (hereinafter "WILMINGTON BS ARM TRUST") is an enterprise formed as a trust organized under the laws of New York, its C/O is Specialized Loan Servicing LLC at 8742 Lucent Blvd, Ste. 300, Highlands Ranch, CO 80129.



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

3.

Defendant Mortgage Registration Systems, Inc., (hereinafter "MERS") is a Delaware corporation with its principle place of business at 1818 Library Street, Suite 300, Reston, Virginia 20190. Mortgage Electronic Registration Systems operates a MERS Registry. MERS Identifier No. 1000157-0006754038-1 appears on Plaintiff's security instrument and serves as a link to this MERS Registry. The **MERS** registered agent is listed as inactive in the State of Oregon and the MERS ID lists this MERS number as inactive for this borrower Tadros, attached as Exhibit 03. The MERSID printout also shows Bank of America as Servicer. MERS is named on Plaintiff's security instrument as mortgagee and beneficiary, acting as nominee for Countrywide Home Loans, Inc. and its successors and assigns in interest.

4.

Deed of Trust lists Countrywide Home Loans, Inc. as the Lender and MERS as the beneficiary. MERS is not named as the payee of the note but is named as acting solely as a "nominee" for lender as the beneficiary of the security interest, Deed of Trust. The first assignment in 2011 attempted to transfer interest in Deed of Trust to CITIBANK BS ARM TRUST. Said Assignment instrument was recorded in Clackamas County and mentioned above as Exhibit 01. Another assignment attempted to transfer interest in the Deed of Trust to WILMINGTON BS ARM TRUST. This Assignment instrument was recorded in Clackamas County and mentioned above as Exhibit 02. Both Citibank and Wilmington are Trustees for certificateholders of the Structured Asset Mortgage Investments, Bear Stearns Arm Trust, Mortgage Pass Through Certificates, Series 2006-4. The Trust was formed by the execution of a trust agreement referred to in the finance and securitization industry as a "Pooling and



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

Servicing Agreement." The Trust agreement is filed under oath with the Securities and Exchange Commission. The acquisition of the assets of the subject Trust and the Trust Agreement are governed under Federal Securities Laws.

5.

Moreover, at all material times hereto, Defendant SAMI BS ARM TRUST 2006-4 filed its prospectus with the Securities and Exchange Commission in April of 2006 at SEC File 333-132232-14. Defendant pledged the subject Note and Deed of Trust as collateral to a securitized trust herein referred to as SAMI BS ARM TRUST 2006-4, however the legal conveyance of the asset to the trust was illegal and in direct contravention of the trust's governing documents. The "cut off" date for assets to be transferred to SAMI BS ARM TRUST 2006-4 was September 29, 2006. There have been two separate assignments of the Deed of Trust to the SAMI BS ARM TRUST 2006-4 trust recorded on the county land records. Therefore, the SAMI BS ARM TRUST 2006-4 according to its own Pooling and Servicing Agreement was contractually closed from conducting business after the closing date of September 29, 2006. It appears that the Note is not endorsed specifically to the Trustee and was not properly endorsed in blank. Even if arguendo, the Bank argues to just be a holder, this securitization trust is not allowed to just take the Property. To preserve its tax status, this SAMI BS ARM TRUST 2006-4 is forbidden from taking Property after its cut-off dates, which in this case is September 29, 2006. As a result, if the trust doesn't own the loan according to the PSA it can't receive the proceeds of the foreclosure or the title to the home, even if it's allowed to foreclose as a holder. SAMI BS ARM TRUST 2006-4 trust did not receive the loan into the trust until 2011 which is well after the cut-off date and therefore this assignment would be



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

deemed void. Therefore, SAMI BS ARM TRUST 2006-4 is not a real party in interest and lacks standing to bring the current nonjudicial foreclosure action against Plaintiff TADROS.

6.

In this case Plaintiff is not trying to enforce the PSA agreement, they're simply trying to show the foreclosing trust doesn't have standing. Standing is a threshold issue to any litigation and the homeowners axiomatically have the right to raise it. So once again, SAMI BS ARM TRUST 2006-4 had a cut-off date to transfer the assets from the trust per the Pooling and Servicing Agreement dated as of September 29, 2006. The terms of the Pooling and Servicing Agreement forbids transfers of loans into the Trust any later than 90 days following the closing date unless a replacement loan is placed into the Trust within two years after the closing date. The Assignment of the Deed of Trust did not occur within 24 months of the closing date of the Trust. The first Assignment from MERS to Citibank SAMI BS ARM TRUST 2006-4 did not occur until December 19, 2011 or arguably date of the other deed of trust which is June 05, 2017. Therefore, the SAMI BS ARM TRUST 2006-4 securitized trust had no capacity to receive any further assets as initially named in the trust and both Assignments should be declared void as it would violate the express terms of the Trust Agreement.

7.

As a result of the Promissory Note being placed in the SAMI BS ARM TRUST 2006-4 and part of the Pooling and Servicing Agreement, it becomes personal property under the UCC-1. The Sponsor of SAMI BS ARM TRUST 2006-4 is to indicate that the Loans within the Trust have been assigned by the Sponsor to the Trustee in accordance with the Pooling and Servicing Agreement. There is no record of Assignments to either the Sponsor or the Depositor of the Trust as required by the Pooling and Servicing Agreement. It appears the responsible parties named in the PSA have not fulfilled their fiduciary responsibilities to the



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

Homeowner nor the Certificate Holders of the Trust and have violated the requirements set forth in 26 U.S.C. § 860G.

8.

Trust Deeds and Notes are supposed to follow one another and are expected to be recorded as ownership changes occur. This allows for a perfect chain of title of the trust deed and note and then allows lien holders to set the "priority" of said lien. Recordings also determine who had beneficial interest in the respective Note. MERS and the current SAMI BS ARM TRUST 2006-4 Trust ownership of the Note and Trust Deed is exacerbating the two concerns mentioned in that it is not readily apparent who was in actual ownership of the beneficial interest in the Note from 2006 to 2011, arguably 2016 and creates an imperfect chain of title.

9.

Additionally, when a Note is transferred, it must be endorsed and signed, in the manner of a person signing his paycheck over to another party. Customary procedure was to endorse it as "Pay to the Order of' and the name of the party taking the Note and then signed by the endorsing party. With a new party holding the Note, there would now need to be an Assignment of the Debt. This could not work if MERS was to be the foreclosing party. Once a name is placed into the endorsement of the Note, then that person has the beneficial interest in the Note. Any attempt by MERS to foreclose in the MERS name would result in a challenge to the foreclosure since the Note was owned by the "Lender" party and MERS was the "Beneficiary". MERS would not have the legal standing to foreclose, since only the "person of interest" would have such authority. So, it was decided that the Note would be endorsed "in blank", which effectively made the Note a "Bearer Bond", and anyone holding the Note



**PACIFIC PROPERTY LAW, LLC**
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

would have the "legal standing" to enforce the Note under Uniform Commercial Code. This would also suggest that Assignments would not be necessary. MERS is not the true beneficiary of the loan and probably has no knowledge of the true beneficiary of the loan for whom they are representing in an "Agency" relationship.

10.

In this instance regarding this Note and Trust Deed, they were held by separate entities and the Deed of Trust has no assignable quality independent of the debt. It can be argued that if the Deed of Trust and Note are not together with the same entity, then there can be NO enforcement of the Note. The Deed of Trust enforces the Note and provides the capability for the lender to foreclose on the Security Interest, i.e. the Property. If the Deed of Trust is separate from the Note, then enforcement, i.e. foreclosure cannot occur. In the instant case, SAMI BS ARM TRUST 2006-4 as well as Bank of America, N.A., SLS and/or arguably MERS has no legal standing to foreclose on the subject Property mentioned herein. Additionally, MERS did not even have authority to make the last assignment on June 05, 2017 as it was inactive.

11.

This type of endorsing of Notes and using MERS as an invalid beneficiary and the Trust not transferring the asset pursuant to its own rules and procedures violates the Oregon Deed of Trust Act and the Trustee and current alleged and invalid beneficiary has no authority to foreclose on the Deed of Trust.

12.

Plaintiff has initiated the instant case seeking Declaratory Judgment to enjoin and invalidate any foreclosure action against Plaintiff and bring action to void the current



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

foreclosure and current collection because the current beneficiary has no legal standing to pursue any foreclosure under the circumstances. Additionally, Plaintiff asks the Court for a ruling as to the correct legal entity that owns the Deed of Trust so it can engage in good faith negotiations to obtain a loan modification or reinstate the loan.

13.

It is important to note that Wilmington Trust been subject to litigation lately in different jurisdictions as not acquiring proper interest or standing in the loans it claims to take ownership in and said cases are strikingly similar to this case. The issue with Wilmington as Trustee for SAMI BS ARM TRUST 2006-4 is that it is not a trust holding beneficial rights to Tadros's loan, but rather it is an undisclosed "Participation Agent" for yet more undisclosed investors. Tadros therefore asserts that Wilmington Trust is nothing more than a sham. Tadros claims that Wilmington is merely a trustee/fiduciary purporting to represent a secret agent disguised as a trust, to which this secret agent appears to be acting on behalf of undisclosed investors, and those undisclosed investors are apparently represented by unknown entities. Wilmington Trust which has been subject to a cease and desist order for this type of behavior. The concern in different jurisdictions with Wilmington Trust agents is that these type of entities end up with the loan after it has been transferred numerous times, like in this instance appeared the loan has been transferred from Countrywide, MERS, BAC, Citibank Bears Stearns ARM Trust and other undisclosed entities to this Trust and by a complete lack of transparency regarding the identities of these involved with this Trust, so there is a suspicion that this is not a legitimate assignee trust with beneficial rights to the loans. This is the assertion that Plaintiff hopes to substantiate in this case in order to show that no entity currently has any proper beneficial interest in said note and deed of trust secured against the Tadros property.

14.



**PACIFIC PROPERTY LAW, LLC**
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

The Wilmington Trust is not a proper legal entity as substantiated by charging orders and other infractions that these entities have encountered amongst other States, Attorney Generals, Class Action lawsuits and its own pooling and servicing agreements. The Wilmington Trust specifically has run into many problems with its activities and conduct in transferring its interest alongside of the fraudulent Wilmington Trust entity.

15.

As a result of the Promissory Note being placed in the Wilmington Trust and part of the Pooling and Servicing Agreement, it becomes personal property under the UCC-1. The Sponsor of these trusts is to indicate that the Loans within the Trust have been assigned by the Sponsor to the Trustee in accordance with the Pooling and Servicing Agreement. There is no record of Assignments to either the Sponsor or the Depositor of the Trust as required by the Pooling and Servicing Agreement. It appears the responsible parties named in the PSA have not fulfilled their fiduciary responsibilities to the Homeowner nor the Certificate Holders of the Trust and have violated the requirements set forth in 26 U.S.C. § 860G.

16.

Trust Deeds and Notes are supposed to follow one another and are expected to be recorded as ownership changes occur. This allows for a perfect chain of title of the trust deed and note and then allows lien holders to set the "priority" of said lien. Recordings also determine who had beneficial interest in the respective Note. MERS and the current WILMINGTON Trust ownership of the Note and Trust Deed is exacerbating the two concerns mentioned in that it is not readily apparent who was in actual ownership of the beneficial interest in the Note and Deed of Trust from 2005 to the present time and creates an imperfect chain of title. MERS and Countrywide had engaged in such massive fraud on a large scale, it is not far from the realm of



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

possibility that this case has same exact actors and that all and any transfers and assignments are ALL predicated on fraud.

17.

So over the last year, many cases across the United States are starting to illuminate a particular fact pattern similar to this fact pattern concerning the Tadros loan and all these cases are shedding light on Wilmington's improper transfers and lack of standing in this case as well as many others. It appears that the SEC has just issued cease and desist proceedings against Wilmington Savings Fund Society, FSB aka WILMINGTON. These proceedings arise from WILMINGTON'S fundamental failure to comply with the rules and regulations that govern the conduct of transfer agents. Similar cases have arisen shedding light on the fraud of Countrywide, MERS, Bank of America, Citibank, Wilmington and SAMI Bear Stearns ARM Trusts.

18.

It appears that Wilmington (for this section hereinafter "WSFS" acquired Christiana Bank & Trust Company ("CB&T"). CB&T ceased to exist and WSFS began performing the services formerly performed by CB&T, including transfer agent services, under the name Christiana Trust. WSFS provided transfer agent services, as defined by Section (3)(a)(25) of the Exchange Act, to a number of clients, including to at least one issuer with a security that was registered under Section 12 of the Exchange Act.

19.

The transfer agent services undertaken by WSFS included maintaining master securityholder files (i.e., official lists of individual securityholder accounts), registering



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

ownership and the transfer of ownership of securities, monitoring the issuance of securities, and handling, processing and storing paper securities certificates. WSFS Filed Inaccurate Transfer Agent Registration and Annual Reporting Forms in Violation of Sections 17A(c)(1) and 17A(d)(1) and Rules 17Ac2-1 and 17Ac2-2 thereunder.

20.

Section 17A(c) of the Exchange Act requires transfer agents to register with the Commission or, if the transfer agent is a bank, with a bank regulatory agency, before providing transfer agent services. Pursuant to Section 17A(c)(2), to register, a bank transfer agent files a registration form (Form TA-1), which provides basic information about the transfer agent's business and activities. The Form TA-1 must be kept current and updated on an as-needed basis. If any of the information on the Form TA-1 becomes inaccurate, misleading or incomplete, Rule 17Ac2-1(c) requires the transfer agent to file an amendment to the form within 60 days of the occurrence. Rule 17Ac2-2(a) requires each registered transfer agent to also file an annual report with the Commission on Form TA-2, describing its transfer agent activities. These forms provide important information about the organization and activities of registered transfer agents, which allows the Commission to more effectively and efficiently monitor the activities of registered transfer agents and to evaluate compliance with the Transfer Agent Rules.

21.

On December 3, 2010, WSFS acquired CB&T and immediately began performing the transfer agent services that had previously been performed by CB&T. However, although it was required to amend its Form TA-1 within 60 days of any change that would render the form "inaccurate, misleading, or incomplete," WSFS did not file a Form TA-1 until June 22, 2011, six months later. Moreover, when WSFS filed its untimely Form



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

TA-1, it inaccurately listed the name of the entity performing transfer agent services as "Wilmington Savings Fund Society, FSB," rather than "Wilmington Savings Fund Society, FSB D/B/A Christiana Trust." This is inaccurate because WSFS markets its transfer agent services under the name Christiana Trust.

22.

In addition, WSFS did not file an annual Form TA-2 for the year ending December 31, 2010, even though it had operated as a transfer agent since acquiring CB&T earlier that month. Further, when WSFS finally filed its first annual Form TA-2 on April 16, 2012, for the year ending December 31, 2011, WSFS failed to identify the correct number of individual securityholder accounts for which it maintained master securityholder files. WSFS was unable to provide the correct number on its Form TA-2 because it could not identify all of the issuers to which it provided transfer agent services. WSFS Failed to Maintain Accurate Books and Records in Violation of Sections 17(a) and 17A(d)(1) and Rules 17Ad-10 and 17Ad-11.

23.

Pursuant to Rule 17Ad-10(e), a recordkeeping transfer agent must keep an accurate control book, which is a record or other document that shows the total number of shares (in the case of equity securities) or the principal dollar amount (in the case of debt securities) authorized and issued by the issuer.

24.

In addition, Rule 17Ad-10(a) requires a recordkeeping transfer agent to accurately post transactions to the master securityholder file with details, such as the certificate number, number of shares or principal dollar amount, the securityholder's registration, the address of the registered securityholder, and the issue and cancellation dates for the security



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

Certificate Detail"), about the securities issued, purchased, transferred or redeemed. When there is a discrepancy between the Certificate Detail for a security transferred or redeemed and the Certificate Detail posted to the master securityholder file, Rule 17Ad-10(a)(1) requires that the details of that discrepancy must be maintained in a subsidiary file. The transfer agent must diligently and continuously seek to resolve those differences and then promptly update the master securityholder file.

25.

A transfer agent's failure to perform its duties promptly, accurately, and safely can compromise the accuracy of an issuer's securityholder records, disrupt the channels of communication between issuers and securityholders, disenfranchise investors, and expose investors, securities intermediaries, and the securities markets as a whole to significant financial loss.

26.

WSFS maintained master securityholder files for several issuers to which it provided transfer agent services; however, those files contained multiple inaccuracies. For example, for certain issues, WSFS failed to maintain accurate records of the outstanding balances and registered incorrect securityholder names in the master securityholder files.

27.

Further, WSFS did not maintain subsidiary files or a control book for any issuers to which it provided transfer agent services and, therefore, WSFS could not determine whether, for any issuers, there were differences between the total number of shares or total principal dollar amount of securities in the master securityholder file for a particular issue and the number of shares or principal dollar amount in the control book for that issue (one type of a "Record



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

Difference"). WSFS was required to report Record Differences that existed for more than 30 days ("Aged Record Differences") and exceeded certain aggregate dollar thresholds that are established by Rule 17Ad-11 of the Transfer Agent Rules. WSFS was unable to determine whether Aged Record Differences existed and, therefore, was unable to determine whether it was required to report any Aged Record Differences. Indeed, WSFS' account administrators did not even know that WSFS was required to maintain subsidiary files or a control book.

28.

Wilmington as well as Countrywide, Bank of America and Bear Sterns has engaged in bad faith and fraudulent transfers and conduct and activity and the following trust is just a front and a fraud that cannot undo the fraudulent transfers starting with MERS from the origination of this loan. This foreclosure on Plaintiff's property is unlawful, illegal and conducted in bad faith. The foreclosure must be overturned and reversed and title must be returned to the Plaintiff.

29.

Notices of transfer or assignment were never delivered to Plaintiff Tadros. This loan has been assigned several times to different beneficiaries and also to several servicers. This constitutes breaches of several federal notice of transfer laws. Section 404 amends Section 130(a) of TILA AND 15 USC § 1640(a) provides that the failure to give the notice can result in liability for actual and up to $4,000 statutory damages per violation.

30.

Countrywide, Bank of America, MERS Citibank, SAMI BS ARM Trust and Wilmington entity have no ability to prove standing in this case and never could act as a proper beneficiary in the first instance. The second instance is simply that MERS did not have the proper rights transferred to it creates even more transfer issues at the second assignment.



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

## II. JURISDICTION, VENUE, AND PARTIES

### A. JURISDICTION

#### *i. Diversity of Citizenship*

31.

Diversity jurisdiction under 28 U.S.C. § 1332 exists because this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs. The named parties are of completely diverse citizenships. The Property is situated in the State of Oregon and the Plaintiff is a resident of Oregon. Defendant MERS is located in Virginia and is a citizen of Virginia for purposes of diversity jurisdiction. See 28 U.S.C. § 1332(c)(1). CitiBank as Trustee of Bear Stearns Arm Trust is located at 9062 Old Annapolis Rd, Columbia, MD 21045 and is a citizen of Maryland for purposes of diversity jurisdiction. See 28 U.S.C. § 1332(c)(1). Wilmington as Trustee of Bear Stearns Arm Trust has its address located c/o Specialized Loan Servicing LLC at 8742 Lucent Blvd., Ste. 300, Highlands Ranch, CO 80129. Bank of America's headquarters are located at 101 South Tryon Street, Charlotte, NC 28255 None of the Defendants are citizens of the State of Oregon.

#### *ii. Amount in Controversy*

32.

The amount in controversy exceeds $75,000, exclusive of interest and costs. This Complaint concerns a loan with an original balance of $570,000, with a balance allegedly due and owing of approximately $700,000.00 together with interest thereon at a percentage rate per annum, plus all accrued late charges thereon and all trustee's fees, foreclosure costs and any sums advanced by the beneficiary pursuant to the terms and conditions of said deed of trust. Therefore, the request for relief stated in this Complaint places the claim well over $75,000 in controversy, exclusive of interests and costs.



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

***iii. Supplemental Jurisdiction***

33.

Court has supplemental jurisdiction over Plaintiff's pendent state law claims pursuant to 28 U.S.C. § 1367. This Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

***iv.* Federal Question Jurisdiction**

34.

In addition, as a separate basis for jurisdiction, the United States District Court of the District of Oregon has original jurisdiction over this action under 26 U.S.C. 1331 (federal question). As explained below, the action presents questions of federal law under the Improper Transfer of Title laws in violation of 26 U.S.C. § 860 (F) & (G), 15 U.S.C. § 1692 *et seq*, Violation of the Fair Debt Collection Practices Act and Violation of Transfer of Ownership Notices per 15 U.S.C. 1641, Section 404.

**B. VENUE**

35.

Venue for all claims lies in the District of Oregon since Plaintiff's claims arose from acts of the Defendants perpetrated therein or perpetrated on an Oregon resident through the phone or mail system.

**C. PARTIES**

36.

Plaintiffs are now residents of the State of Oregon and the Property in question is located at 4671 SW Trail Rd., Tualatin, OR 97062.

37.



**PACIFIC PROPERTY LAW, LLC**
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

Countrywide Bank is the original lender as reflected on the Deeds of Trust dated August 17, 2006 and recorded on August 25, 2006 as Doc. No. 2006-078457. MERS is listed as the Beneficiary on said Deed of Trust. Bank of America is listed as Servicer on the MERS ID website and is listed as the recording return addressee on the first recorded assignment.

38.

There were two assignments of the Deed of Trust, the first Assignment from MERS to Citibank as Trustee for BS Arm Trust is recorded on December 19, 2011 at Recording No. 2011-073042, attached as Exhibit 01. The subsequent assignment from MERS to Wilmington as Trustee for BS Arm Trust is recorded on June 05, 2017 at Recording No. 2017-037001, attached as Exhibit 02. SLS appears to act as the current servicer for Wilmington BS Arm Trust.

## III. ISSUES PRESENTED

39.

Moreover, at all material times hereto, Defendant SAMI BS ARM TRUST 2006-4 filed a prospectus with the Securities and Exchange Commission. Defendant pledged the subject Note and Deed of Trust as collateral to this SAMI BS securitized trust, however the legal conveyance of the asset to the trust was illegal and in direct contravention of the trust's governing documents. This SAMI BS trust is not listed or recorded or filed with any secretary of state and only exists from its PSA and the listing on the credit swaps done in 2006 and 2007 involving the SAMI BS Arm Trust, Series 2006-4. There is no transparency as to the identities of those involved with this Trust. This is NOT a legitimate assignee trust and has NO beneficial rights to the loans it holds, in particular this Tadros loan. Wilmington is a trustee purporting to represent a secret agent disguised as at trust and that agent appears to be acting on behalf of undisclosed investors. If you look at any cover page for the "Securitization



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

Servicing Agreement" you will notice there is no mention as to who is the actual owner and investor for this Trust and supports the issue that is being brought up in surrounding lawsuits regarding the illegality of undisclosed Participation Agents that act as a shield for more undisclosed investors. It is not sure how Wilmington can claim to hold clear title with the misleading and unclear references to the trust, trustee, investor and beneficiaries in its own Securitization Servicing Agreement, prospectus and the Assignment(s). Therefore, Wilmington is not a real party in interest and lacks standing to bring the current judicial foreclosure action and any collection action against Plaintiff Tadros.

40.

The issue remains that Wilmington involves agents that are not disclosing and tracking information and tracing the debt balances, securityholders, investors, shareholders and does not maintain proper recordkeeping and establish any proper legal interest in the Deed of Trust or Note as the debt is not properly documented in its own formation documents and recorded documents against the subject property.

41.

As a result of the Promissory Note being placed in the SAMI BS Arm Trust and part of the Pooling and Servicing Agreement, it becomes personal property under the UCC-1. The Sponsor of SAMI BS Arm Trust is to indicate that the Loans within the Trust have been assigned by the Sponsor to the Trustee in accordance with the Pooling and Servicing Agreement. There is no record of Assignments to either the Sponsor or the Depositor of the Trust as required by the Pooling and Servicing Agreement. It appears the responsible parties named in the PSA have not fulfilled their fiduciary responsibilities to the Homeowner nor the Certificate Holders of the Trust and have violated the requirements set forth in 26 U.S.C. § 860G.



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

42.

Trust Deeds and Notes are supposed to follow one another and are expected to be recorded as ownership changes occur. This allows for a perfect chain of title of the trust deed and note and then allows lien holders to set the "priority" of said lien. Recordings also determine who had beneficial interest in the respective Note. MERS and the current SAMI BS Arm Series 2006-4 Trust ownership of the Note and Trust Deed is exacerbating the two concerns mentioned in that it is not readily apparent who was in actual ownership of the beneficial interest in the Note from 2006 to 2011, or even arguably 2017 and creates an imperfect chain of title through several questionable assignments to fraudulent trust entities.

43.

Additionally, when a Note is transferred, it must be endorsed and signed, in the manner of a person signing his paycheck over to another party. Customary procedure was to endorse it as "Pay to the Order of' and the name of the party taking the Note and then signed by the endorsing party. With a new party holding the Note, there would now need to be an Assignment of the Debt. This could not work if MERS was to be the assigning and/or foreclosing party. Once a name is placed into the endorsement of the Note, then that person has the beneficial interest in the Note. Any attempt by MERS or one of these Trusts to assign/enforce and/or foreclose in the MERS or Trust name would result in a challenge to the foreclosure since the Note was owned by the "Lender" party and MERS was the "Beneficiary". MERS and the Trusts would not have the legal standing to foreclose, since only the "person of interest" would have such authority. So, it was decided that the Note would be endorsed "in blank", which effectively made the Note a "Bearer Bond", and anyone holding the Note would have the "legal standing" to enforce the Note under Uniform Commercial Code. This would also suggest that Assignments would not



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

be necessary. MERS is not the true beneficiary of the loan and probably has no knowledge of the true beneficiary of the loan for whom they are representing in an "Agency" relationship. The Trusts and there sham agents are also not valid beneficiaries, these assignees have actually assigned away and formed sham entities that cannot legally hold title to the Deed of Trust or the Note.

44.

In this instance regarding this Note and Trust Deed, they were held by separate entities and the Deed of Trust has no assignable quality independent of the debt. It can be argued that if the Deed of Trust and Note are not together with the same entity, then there can be NO enforcement of the Note. The Deed of Trust enforces the Note and provides the capability for the lender to foreclose on the Security Interest, i.e. the Property. If the Deed of Trust is separate from the Note, then enforcement, i.e. foreclosure cannot occur. In the instant case, SAMI BS Arm Trust, nor Wilmington or Bank of America, N.A. and/or arguably MERS has no legal standing to collect on the debt or foreclose on the subject Property mentioned herein.

45.

This type of endorsing of Notes and using MERS as an invalid beneficiary and the Trust not transferring the asset pursuant to its own rules and procedures violates the Oregon Deed of Trust Act and the Trustee and current alleged and invalid beneficiary has no authority to foreclose on the Deed of Trust.

46.

Plaintiff has initiated the instant case seeking Declaratory Judgment to enjoin and invalidate any foreclosure action against Plaintiff and bring action to void this foreclosure because the current beneficiary has no legal standing to pursue said nonjudicial foreclosure



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

under the circumstances. Plaintiff asks the Court for a determinative ruling as to who is the proper beneficiary and owner of the Deed of Trust and Note so it may feel secure legally to reinstate said loan and make payment to the proper party and/or make modification terms with the proper legal party. Also damages for violations of respective and relevant statutes.

## IV. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### DECLARATORY JUDGMENT - IMPROPER TRANSFER OF TITLE
### VIOLATION OF 26 USC 860 (F) & (G)

47.

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

48.

Defendant WILMINGTON as successor trustee to Citibank as Trustee of Bear Stearns AR Trust, Mortgage Pass-Through Certificates, Series 2006-4 does not legally exist in this instance to make claim to have proper beneficial interest in the Deed of Trust or proper ownership over the promissory note between Plaintiff and original MERS as nominee for Countrywide Bank, a division of Treasury Bank, N.A.

49.

Defendant SAMI BS ARM TRUST 2006-4 filed its prospectus with the Securities and Exchange Commission in April of 2006 at SEC File 333-132232-14. Defendant pledged the subject Note and Deed of Trust as collateral to a securitized trust herein referred to as SAMI BS ARM TRUST 2006-4, however the legal conveyance of the asset to the trust was illegal and in direct contravention of the trust's governing documents. The "cut off" date for assets to be transferred to SAMI BS ARM TRUST 2006-4 was September 29, 2006. There have been



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

two separate assignments of the Deed of Trust to the SAMI BS ARM TRUST 2006-4 trust recorded on the county land records. Therefore, the SAMI BS ARM TRUST 2006-4 according to its own Pooling and Servicing Agreement was contractually closed from conducting business after the closing date of September 29, 2006. It appears that the Note is not endorsed specifically to the Trustee and was not properly endorsed in blank. Even if arguendo, the Bank argues to just be a holder, this securitization trust is not allowed to just take the Property. To preserve its tax status, this SAMI BS ARM TRUST 2006-4 is forbidden from taking Property after its cut-off dates, which in this case is September 29, 2006. As a result, if the trust doesn't own the loan according to the PSA it can't receive the proceeds of the foreclosure or the title to the home, even if it's allowed to foreclose as a holder. SAMI BS ARM TRUST 2006-4 trust did not receive the loan into the trust until 2011 which is well after the cut-off date and therefore this assignment would be deemed void. Therefore, SAMI BS ARM TRUST 2006-4 is not a real party in interest and lacks standing to bring the current nonjudicial foreclosure action against Plaintiff TADROS.

50.

If this is verified in discovery in this case, these entities are all in violation of securities laws, fraud statutes and this entity COULD NOT HAVE EVER possibly hold title to this Property and had no right to either initiate a judicial foreclosure action or any type of collection action in this matter.

As a result of the Promissory Note and/or Deed of Trust being placed in Wilmington Trust as Trustee for Bear Stearns ARM Trust Mortgage Pass-Through Certificates, Series 2006-4 and part of the Pooling and Servicing Agreement, it becomes personal property under



**PACIFIC PROPERTY LAW, LLC**
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

the UCC-1. The Sponsor of these trusts is to indicate that the Loans within the Trust have been assigned by the Sponsor to the Trustee in accordance with the Pooling and Servicing Agreement. There is no record of Assignments to either the Sponsor or the Depositor of the Trust as required by the Pooling and Servicing Agreement. It appears the responsible parties named in the PSA have not fulfilled their fiduciary responsibilities to the Homeowner nor the Certificate Holders of the Trust and have violated the requirements set forth in 26 U.S.C. § 860G.

51.

The Deed of Trust was not transferred into the WILMINGTON Bear Stearns Trust entity until the date of the recording of the Assignments of the Deed of Trust. Problem is we do not know how or when or if Bearn Stearns Trust gave the authority to Citibank or Wilmington to obtain property authority to or from the Bear Stearns Trust and if that Trust was ever valid and legally was allowed to transfer said instruments in and out of the Bear Stearns Trust. 26 USC 860G provides that a mortgage is only considered a qualified mortgage if (1) it originates in the trust, (2) the qualified mortgage is put in within 30 days, or (3) constitutes a qualified replacement mortgage that is put in to exchange a defaulted obligation within 2 years. This constitutes a prohibited transfer under 26 USC 860F as the Note and Deed of Trust were not conveyed to the Trust by the cutoff date. This Trust was created in 2006 and all assets were to be transferred by end of 2007. Consequently, the rules and the PSA dictated that Assets transferred into the Bear Stearns trust and out of it no later than December of 2007 and MERS attempted to transfer the Tadros Deed of Trust into Bear Stearns in December of 2011. Hence the entity is void ab initio and PSA § 2.01, 2.03 forbids such transfers as well as 26 USC 860G.



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

52.

WILMINGTON nor Bear Stearns Series 2006-4 Trust can claim to hold legal and/or equitable interest in the Deed of Trust and cannot claim to have the power to foreclose on said Deed of Trust because said WILMINGTON Bear Stearns is an invalid beneficiary and possibly a nonexistent beneficiary because said transfer contravenes the Trust or rules pertaining to the legal authority, capacity and powers of WILMINGTON and Citibank and Bearn Stearns Trust. In addition, WILMINGTON does not have proper authority or capacity to enforce the Note either.

53.

As a result of Defendants' failure to properly transfer and assign the Deed of Trust into WILMINGTON SAMI BS ARM Trust entity, the current foreclosure action is invalid, illegal, improper and has completely no force or effect to deprive Plaintiff of its title in the Property. In addition, since the current alleged beneficiary does not have proper legal interest in the deed of trust it has violated the fair debt collection practices act. Therefore, any and all foreclosure action and collection actions against the security in question should be set aside, invalidated and void and Defendants' should be enjoined from taking any action to dispossess Plaintiff from the property.

**SECOND CLAIM FOR RELIEF**
**FRAUD**

54.

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

55.

Pursuant to Section 17A of the Exchange Act, the Commission promulgated rules governing services provided by registered transfer agents (the "Transfer Agent Rules"). As a



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

registered transfer agent, WILMINGTON was required to, among other things: (1) keep its registration current and accurate and to file annual reports regarding its transfer agent services; (2) make and maintain certain books and records for each issuer to which it provided transfer agent services**;** and (3) have written policies and procedures with respect to certain of its transfer agent services.

56.

WILMINGTON commenced acting as a transfer agent in 2010. From that time through 2013, however, WILMINGTON failed to keep its registration current and accurate and failed to file an accurate annual report of its services**.** In addition, although WILMINGTON maintained some records for issuers to which it provided transfer agent services, it did not maintain all of the records or create all of the reports required by the Transfer Agent Rules. Further, those records WILMINGTON did maintain were inaccurate and/or incomplete. Finally, during this period, WILMINGTON did not have any written policies or procedures to ensure compliance with the Transfer Agent Rules and WILMINGTON employees were unaware of the Rules and received no training regarding the Transfer Agent Rules until 2013.

57.

On December 3, 2010, WILMINGTON acquired Christiana Bank & Trust Company ("CB&T"). CB&T ceased to exist and WILMINGTON began performing the services formerly performed by CB&T, including transfer agent services, under the name Christiana Trust. WILMINGTON provided transfer agent services, as defined by Section (3)(a)(25) of the Exchange Act, to a number of clients, including to at least one issuer with a security that was registered under Section 12 of the Exchange Act.



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

58.

The transfer agent services undertaken by WILMINGTON included maintaining master securityholder files (i.e., official lists of individual securityholder accounts), registering ownership and the transfer of ownership of securities, monitoring the issuance of securities, and handling, processing and storing paper securities certificates. WILMINGTON Filed Inaccurate Transfer Agent Registration and Annual Reporting Forms in Violation of Sections 17A(c)(1) and 17A(d)(1) and Rules 17Ac2-1 and 17Ac2-2 Thereunder.

59.

Section 17A(c) of the Exchange Act requires transfer agents to register with the Commission or, if the transfer agent is a bank, with a bank regulatory agency, before providing transfer agent services. Pursuant to Section 17A(c)(2), to register, a bank transfer agent files a registration form (Form TA-1), which provides basic information about the transfer agent's business and activities. The Form TA-1 must be kept current and updated on an as-needed basis. If any of the information on the Form TA-1 becomes inaccurate, misleading or incomplete, Rule 17Ac2-1(c) requires the transfer agent to file an amendment to the form within 60 days of the occurrence. Rule 17Ac2-2(a) requires each registered transfer agent to also file an annual report with the Commission on Form TA-2, describing its transfer agent activities. These forms provide important information about the organization and activities of registered transfer agents, which allows the Commission to more effectively and efficiently monitor the activities of registered transfer agents and to evaluate compliance with the Transfer Agent Rules.

60.

On December 3, 2010, WILMINGTON acquired CB&T and immediately began performing the transfer agent services that had previously been performed by CB&T. However,



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

although it was required to amend its Form TA-1 within 60 days of any change that would render the form "inaccurate, misleading, or incomplete," WILMINGTON did not file a Form TA-1 until June 22, 2011, six months later. Moreover, when WILMINGTON filed its untimely Form TA-1, it inaccurately listed the name of the entity performing transfer agent services as "Wilmington Savings Fund Society, FSB," rather than "Wilmington Savings Fund Society, FSB D/B/A Christiana Trust." This is inaccurate because WILMINGTON markets its transfer agent services under the name Christiana Trust.

61.

In addition, WILMINGTON did not file an annual Form TA-2 for the year ending December 31, 2010, even though it had operated as a transfer agent since acquiring CB&T earlier that month.

62.

Further, when WILMINGTON finally filed its first annual Form TA-2 on April 16, 2012, for the year ending December 31, 2011, WILMINGTON failed to identify the correct number of individual securityholder accounts for which it maintained master securityholder files**.** WILMINGTON was unable to provide the correct number on its Form TA-2 because it could not identify all of the issuers to which it provided transfer agent services**.** WILMINGTON Failed to Maintain Accurate Books and Records in Violation of Sections 17(a) and 17A(d)(1) and Rules 17Ad-10 and 17Ad-11.

63.

Pursuant to Rule 17Ad-10(e), a recordkeeping transfer agent must keep an accurate control book, which is a record or other document that shows the total number of shares (in the



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

case of equity securities) or the principal dollar amount (in the case of debt securities) authorized and issued by the issuer.

64.

In addition, Rule 17Ad-10(a) requires a recordkeeping transfer agent to accurately post transactions to the master securityholder file with details, such as the certificate number, number of shares or principal dollar amount, the securityholder's registration, the address of the registered securityholder, and the issue and cancellation dates for the security ("Certificate Detail"), about the securities issued, purchased, transferred or redeemed. When there is a discrepancy between the Certificate Detail for a security transferred or redeemed and the Certificate Detail posted to the master securityholder file, Rule 17Ad-10(a)(1) requires that the details of that discrepancy must be maintained in a subsidiary file. The transfer agent must diligently and continuously seek to resolve those differences and then promptly update the master securityholder file.

65.

A transfer agent's failure to perform its duties promptly, accurately, and safely can compromise the accuracy of an issuer's securityholder records, disrupt the channels of communication between issuers and securityholders, disenfranchise investors, and expose investors, securities intermediaries, and the securities markets as a whole to significant financial loss.

66.

WILMINGTON maintained master securityholder files for several issuers to which it provided transfer agent services; however, those files contained multiple inaccuracies. For example, for certain issues, WILMINGTON failed to maintain accurate records of the



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

outstanding balances and registered incorrect securityholder names in the master securityholder files.

67.

Further, WILMINGTON did not maintain subsidiary files or a control book for any issuers to which it provided transfer agent services and, therefore, WILMINGTON could not determine whether, for any issuers, there were differences between the total number of shares or total principal dollar amount of securities in the master securityholder file for a particular issue and the number of shares or principal dollar amount in the control book for that issue (one type of a “Record Difference”). WILMINGTON was required to report Record Differences that existed for more than 30 days (“Aged Record Differences”) and exceeded certain aggregate dollar thresholds that are established by Rule 17Ad-11 of the Transfer Agent Rules. WILMINGTON was unable to determine whether Aged Record Differences existed and, therefore, was unable to determine whether it was required to report any Aged Record Differences. Indeed, WILMINGTON’ account administrators did not even know that WILMINGTON was required to maintain subsidiary files or a control book.

68.

In sum, the SEC had to issue the following “Cease & Desist” order against “Wilmington Savings Fund Society, FSB” who was the successor to “Christiana Bank & Trust Company.” (See: Wilmington Savings Fund Society – SEC Cease and Desist 2016 ). The following excerpts spell out quite clearly that this entity has been operating as a Trustee / “Transfer Agent” on behalf of unverifiable investors. WILMINGTON’ failure to maintain “books and records,” as well as its filing of records that were “inaccurate and/or incomplete,” means it is very likely that this Trustee represented no one.



**PACIFIC PROPERTY LAW, LLC**
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

69.

Plaintiff demands for strict and pointed discovery to determine if its loan has indeed been misrepresented and fraudulently reported the loan's background as part of the lender master security holder file. It must also be determined if the respective security instruments were ultimately placed in the wrong trust and if the investors are not matching up with the loan that was put in the correct subsidiary files and where this particular security was transferred or assigned and substantiate that this particular security instrument was never ever transferred into the Wilmington Trust structure. WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. § 1692(e)**

70.

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

71.

Under this claim for violation of FDCPA based on Defendant's improper collection of said debt against Tadros, Plaintiff argues that this would basically amount to an assignee collecting upon a debt after the issuance of default since Wilmington nor Citibank as Trustees of the SAMI BS Arm Trust, Series 2006-4 owns this debt. It is not apparent exactly who is acting as original creditor but everyone else is then acting as an assignee of a default loan or "debt in default" and therefore qualifies as a collector under the FDCPA. Since the servicer is not known for sure, when the proper Servicer is



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

identified as Bank of America or SLS (which neither has ever sent RESPA notice of Transfer as servicer) then it too would qualify as debt collector and any of those actors associated therewith would later qualify as debt collectors after discovery. Additionally, any possible other defendants are added to this Complaint may qualify. If any potential or alleged Servicers claims to owe the debt and if it does not in fact owe said debt, this would qualify as deceptive and misleading conduct on behalf of said servicer in addition to other violations as result of improper conduct or neglecting to notify borrower of said transfer to the respective servicer.

72.

The FDCPA is a strict liability statute which specifically prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information regarding a consumer." 15 U.S.C. § 1692e(10). The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to ensure that those debts collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 591 (6th Cir. 2009) (quoting 15 U.S.C. § 1692(e)).

73.

To assess whether particular conduct violates the FDCPA, courts use the "least sophisticated debtor" standard. *See Swanson v. Southern Oregon Credit Service, Inc.*, 869



**PACIFIC PROPERTY LAW, LLC**
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

F.2d 1222, 1227 (9th Cir. 1988). This objective standard "ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd." Clomon v. Jackson, 988 F.2d 1314, 1318-19 (2nd Cir. 1993).

74.

When applying the "least sophisticated consumer" standard, the Misleading statement must also be materially false or misleading to violate FDCPA 15 U.S.C. § 1692e. *Miller* at 596-97. "The materiality standard simply means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer." *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326-27 (6th Cir. 2012).

75.

Given the tests above, it is very clear that if Citibank and subsequent Wilmington as trustees of this SAMI BS Arm Trust, Series 2006-4 and SLS and/or MERS or Bank of America is found to have no proper servicing role or the previously mentioned lenders/investor/beneficiaries hold no title or interest in either the Note or Deed of Trust for this loan, it has been literally violating the FDCPA month after month since it allegedly attempted to take title through an assignment of ownership in the Deed of Trust since closing with countrywide, then the Assignment from MERS to Citibank as Trustee of Sami BS trust in December of 2011 and then from MERS to Wilmington as Trustee of SAMI BS trust in June of 2017 and as well as the numerous violations that



**PACIFIC PROPERTY LAW, LLC**
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

occurred since the first errors in transfer from closing in 2006 and transfer and accounting issues with the Servicer(s).

76.

They way in which Defendants have committed numerous violations using false representations and unfair and deceptive practices to collect against Tadros should entitle Tadros to an award of damages in an amount of no less than from the date of assignment or December of 2011 which arguably would led to violations every month for 6 years and additional false and misleading statements regarding its capacity to collect or have any interest in said loan, unlawful foreclosure, unlawful eviction and conversion of the asset or an amount of no less than $80,000.

**FOURTH CLAIM FOR RELIEF**
**CONSUMER ACT**

77.

Plaintiff re-alleges each of the previous allegations as if set forth fully herein.

78.

The elements of a CPA claim are (1) an unfair or deceptive act or practice; (2) that occurred in the conduct of trade or commerce; (3) which affects the public interest; (4) has injured Plaintiff in either his business or property, and (5) that the act or practice was a proximate cause of said injury.

79.

An act or practice is unfair under the CPA if it offends public policy as established "by statutes [or] the common law", or is "unethical, oppressive, or unscrupulous," among other



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

things. Current federal law suggests a "practice is unfair [if it] causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits." See 15 U.S.C. § 45(n). An act or practice an act or practice is deceptive if it has the capacity to deceive substantial portions of the public in violation of public interest.

80.

Pursuant to Oregon Consumer Protection Act under ORS 646 and violations of the Oregon Consumer Loan Act/Finance rules which are themselves per se violations of the State CPA or CLA, alleged are per se violations of the Federal CPA.

81.

Defendants, jointly and severally organized under MERS Membership, have historically engaged and presently engage in unfair or deceptive trade practices by utilizing the foreclosure process through sham entities originating through use of MERS Foreclosure System proceedings, which system is contrary to and not sufficient under the foreclosure rules to judicially deprive Plaintiff of his real property. Mainly because WILMINGTON and BS Arm Trust have no legal existence to hold any loan or security interest in anything as it does not exist, it is a sham.

82.

Further, Defendants, jointly and severally organized under MERS Membership, have historically engaged and presently engage in unfair or deceptive trade practices which are now causing harm and threaten to cause homeowners greater harm if the sales are carried out. These include:

a. requiring homeowners in Oregon to sign MERS DOTs, which are unconscionable.



**PACIFIC PROPERTY LAW, LLC**
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

b. entering into agreements with one another designed to facilitate foreclosures which benefit Members participating in the MERS System and not homeowners and;

c. having title held in WILMINGTON type sham trust entity that has already been subject to cease and desist order for its complete **failure to comply with the rules and regulations that govern the conduct of transfer agents.** This Wilmington Trust and the SAMI BS Arm Trust are illegal entities that was not allowed to hold interest in the Note or Deed of Trust according to its own PSA and also because of the MERS transfer issues mentioned herein.

83.

Each Defendant violated the CPA by participating in a MERS nonjudicial Foreclosure System proceedings, which is designed to prevent homeowners access to a neutral judicial substitute during a private sale disguised as a judicial foreclosure under the DTA.

84.

Defendants WILMINGTON violated the CPA by promulgating false and improperly executed documents pursuant to the MERS® System rules but in violation of the DTA and other Oregon statutes, as previously set forth in this complaint, for purposes of unlawfully selling Plaintiff's Property.

85.

Defendants promulgated these documents in at least three different ways; including, but not limited to (1) by naming itself as a beneficiary on the Assignment when in fact WILMINGTON could not lawfully be a beneficiary; (2) by continuing to treat MERS as a lawful beneficiary after *Niday* and (2) by executing documents using false or misleading signatures.



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

86.

WILMINGTON and SAMI BS TRUST do not exist and has no right to engage in this foreclosure action or collect on said note and engage servicers or anything of the like in pursuing a debt that it has no legal interest in under the law as it has been doing for last 6 years.

87.

This has caused Plaintiff damages, including, but not limited to the distraction and loss of time to pursue business and personal activities due to the necessity of addressing the wrongful conduct through this and other actions, as well as having to incur costs charged by Defendants and to defend his Property during these unlawful foreclosure proceedings, including incurring the costs of hiring attorneys to represent his interests as homeowner.

**FIFTH CLAIM FOR RELIEF**
**CONTRACTUAL BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

88.

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

89.

Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement. The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. This covenant protects the benefits of the contract that the parties



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

reasonably contemplated when they entered into the agreement.

90.

The alleged owner of the loan that is attempting to enforce this loan and collect payments and foreclose on Plaintiff has no real or proper legal interest in the loan.

91.

Defendant has attempted to collect and enforce said note and has received the Property at foreclosure in lieu of a debt that Defendant is not the owner of said debt on the Property. As a result of the events alleged in this Complaint, Defendant was required to exercise such power of debt enforcement and debt collection in good faith.

92.

Defendant willfully breached their implied covenant of good faith and fair dealing with Plaintiff when Defendant:

I. Attempted to collect and enforce a debt that it does not own;

II. Preparing and attempting collecting, settlement and a foreclosure in order to enforce a debt under Note and Deed of Trust in order to repossess an Asset that it does not have legal right to obtain;

III. Setting up a system of investors, shareholders, beneficiaries and alleged owners of Note and Deed of Trust which are not valid and also impede Plaintiff's ability to ever truly reach a loss mitigation with the property party in interest;

IV. Undertaking the sale of Plaintiff's home with the knowledge that the principal amount did not belong to Defendant and Plaintiff would lose its down payment and any equity Plaintiff would have built up since August of 2006 but for the unlawful foreclosure and ruining Plaintiff's credit rating while Defendant receives an asset it does not own.

93.

As a result of Defendant's breach of this covenant, Plaintiff has suffered injury and



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

has caused Plaintiff potential loss of their home and credit rating. In addition, Plaintiff has incurred and continues to incur legal fees, including attorney fees and costs, as well as expenses to right this wrong as well as the emotional distress of fighting the lender's continual attempt at collection, settlement and the inevitable foreclosure and eventual assumed Sheriff's Sale of Mr. Tadros's property.

WHEREFORE, Plaintiff prays for relief as set forth below.

94.

As a direct and proximate result of Defendant's breach, Plaintiff suffered the following damages:

a. Down payment.
b. Loss of Credit.
c. Fees and costs.
d. All of the fees and costs to now fight the judicial foreclosure Sheriff's sale of Plaintiff's Property.
e. Other reasonable costs and expenses related to Defendant's failure to follow Federal and State Law and to put Plaintiff in an unconscionable situation and breach of contract so as to have no contact with a proper and legal beneficiary or servicer.

95.

As a result of Defendant's breach, Plaintiff retained an Attorney and seeks reimbursement for his reasonable attorney fees, as authorized by the Note and Deed of Trust that are the operative documents that Defendant is seeking to enforce said obligation of Plaintiff through this foreclosure action.



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

**SIXTH CLAIM FOR RELIEF**
**FAILURE TO GIVE NOTICE OF TRANSFER OF SERVICER OR BENEFICIARY**
**12 U.S.C. SECTION 2605 (b) & (c)/ 12 CFR1024.33(b)**

96.

Plaintiff re-alleges each of the previous allegations as if set forth fully herein.

97.

Plaintiff alleges that it did not receive a notice of transfer, assignment of servicing rights from Bank of America or SLS. More disturbing, it is not clear if SLS is the "proper" legal servicer or if Bank of America is the servicer per the information contained on the MERS ID website attached as Exhibit 03.

98.

Under 12 U.S.C. Section 2605 (b)(2)(A) a transfer notice is required under paragraph (1) and shall be made to the borrower not less than 15 days before the effective date of transfer of the servicing of the mortgage loan (with respect to which such notice is made). This was never done and in fact not sure exactly who the servicer is.

99.

Additionally, Tadros alleges to never have received notice of the 2011 transfer of beneficial interest in the deed of trust to Citibank as Trustee for SAMI BS Arm Trust or the 2017 transfer of beneficial interest in deed of trust to Wilmington as Trustee for SAMI BS Arm Trust.

100.

12 CFR 1024.33 states that the transferor servicer shall provide the notice of transfer to the borrower not less than 15 days before the effective date of the transfer of the servicing of



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

the mortgage loan. The transferee servicer shall provide the notice of transfer to the borrower not more than 15 days after the effective date of the transfer. The transferor and transferee servicers may provide a single notice, in which case the notice shall be provided not less than 15 days before the effective date of the transfer of the servicing of the mortgage loan.

101.

As a result of this violation, Plaintiff is entitled to any actual damages to the borrower as a result of the failure; and any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

**SEVENTH CLAIM FOR RELIEF**

**QUIET TITLE**

102.

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

103.

MERS, Bank of America, Citibank, Wilmington as Trustee of SAMI BS Arm Trust never received proper beneficial interest in the Deed of Trust as mentioned herein.

104.

Plaintiff is Fee Simple Owner of the Property mentioned herein.

105.

Plaintiff purchased the Property with a loan from alleged lender known as Countrywide Bank. As stated above, it is persuasive to support the improper transfer theory that MERS claimed to hold the beneficiary status in the Deed of Trust recorded in August of



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

2006 and Citibank does not become "beneficiary", and Bank of America as "Servicer until the Assignment recorded in December of 2011. More telling, the information contained on the MERSID website the investor is shown to be Citibank and the "Servicer" is Bank of America, attached as Exhibit 03. The borrower/Plaintiff was not notified to any of this. It is questionable at best if Countrywide Bank ever had the beneficial interest in the deed of trust or if it actually acted as lender in loan its own money in the consummation of this loan or was it a table funder. It is quite possible that the SAMI BS Arm Trust, Series 2006-4 did not follow its own formation and PSA contractual obligations and rules and could not even accept the Tadros security instrument so the current beneficiary has no beneficial interest in the Deed of Trust.

106.

It is apparent that Defendants did have proper legal authority to proceed with foreclosure under Oregon or Federal law and because Plaintiff(s) never received the proper notice of the actual lender and beneficiary and relied on Defendant's stark and patent misrepresentations regarding who is the owner of the Deed of Trust and Note, the foreclosure should be enjoined and cancelled immediately. Citibank as Trustee of SAMI BS Arm Trust never received proper legal interest or title in the Deed of Trust because of the theories and other possible actors and violations of borrower's federal rights and has absolutely no standing to pursue collection or any type of foreclosure action against Plaintiff's Property. Therefore, the court must NULLIFY AND CANCEL the security instrument currently recorded against property or at least the assignments and rule as to who has the proper legal interest or authority in the Deed of Trust from this point forward or until Plaintiff can



**PACIFIC PROPERTY LAW, LLC**
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

complete full discovery and determine who is the proper legal owner of the Deed of Trust and Note that Defendant is attempted to foreclose upon.

The wrong lender/beneficiary is currently holding the beneficial interest in the Deed of Trust.

107.

Plaintiff is in actual possession of the Property at issue in this case.

108.

Defendants claim some interest adverse to Plaintiff's in the real property described above, but Defendant's claim is without merit and Defendant has no estate, title, claim, lien or interest in the real property or any portion thereof.

109.

Plaintiff has no plain, speedy, or adequate remedy at law.

110P.

RIGHT TO AMEND

Plaintiff reserves the right to Amend this Complaint with new Claims and new Parties as is dictated by the evidence.

WHEREFORE, Plaintiff will ask for the following for each Claim for Relief sustained:

1. Plaintiff's Claims Invalidating the Transfer to SAMI BS Arm Trust and asks for the following Relief:
    i. Nullification and cancellation of the security instrument;
    ii. For Declaratory Judgment invalidating and setting aside the assignment of any interest to SAMI BS Arm Trust, Series 2006-4; and
    iii. For Injunctive relief barring Defendants' from seeking foreclosure, or any collection activity whatsoever.
2. For the Third Claim alleging violations of FDCPA, an amount of damages of no less than $80,000 or an amount to be proven at trial
3. For the Sixth Claim alleging violation of Transfer of Ownership Notices in an amount of damages of no less than $40,000 or an amount to be proven at trial
4. For Compensatory Damages in an amount to be determined by proof at trial.



PACIFIC PROPERTY LAW, LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97219
PHONE (503) 756-0299
E-mail: johnpplllc@gmail.com

5. For a temporary, preliminary or permanent injunction as awarded.
6. For Special Damages in an amount to be determined by proof at trial.
7. For General Damages in an amount to be determined by proof at trial.
8. Awarding Plaintiff its reasonable Attorney Fees and Costs of this Action.
9. For a judgment either reforming or rescinding the Note and Deed of Trust and setting forth terms of restitution.
10. For any prejudgment or other interest according to law.
11. For whatever relief the Court deems just and equitable.

DATED October ___, 2017.

/s/ John A. Cochran
John A. Cochran, OSB #020022
16811 Lakeridge Dr.
Lake Oswego, Oregon 97034
Phone: 503-756-0299
E-mail: johnpplllc@gmail.com