IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ASHRAF N. TADROS and SHAUN M. TADROS | Case No. 3:17-cv-01623-AA<br>**OPINION AND ORDER** |
| Plaintiffs, | |
| v. | |
| WILMINGTON TRUST, NATIONAL ASSOCIATION AS SUCCESSOR TRUSTEE TO CITIBANK, N.A.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; BANK OF AMERICA NA; SPECIALIZED LOAN SERVICING, LLC; QUALITY LOAN SERVICING CORPORATION OF WASHINGTON; ROSE CITY VENTURES, INC.; and RAIN CITY CAPITAL OF OREGON, LLC, | |
| Defendants. | |

AIKEN, District Judge:

Following the sale of their home at a non-judicial foreclosure auction, plaintiffs Ashraf Tadros and Shaun Tadros seek a preliminary injunction, asking this Court to prevent defendant Wilmington Trust, National Association ("Wilmington") from taking action to evict plaintiffs from their home or to transfer of possession of the property to the purchaser at the auction.

Page 1 – OPINION AND ORDER

Plaintiffs contend that the foreclosure sale must be invalidated because Wilmington, on whose behalf the trustee's sale was conducted, did not have a beneficial interest in the Deed of Trust on the date of the sale. For the reasons set forth below, the motion for a preliminary injunction is denied.[1]

## BACKGROUND

On August 17, 2006, plaintiffs took out a loan from Countrywide Home Loans, Inc., to finance the purchase of real property located at 4671 SW Trail Road in Tualatin, Oregon. Defendant Bank of America, N.A. was the loan servicer. The mortgage was in many ways typical of the type of loan that precipitated the foreclosure crisis. Countrywide loaned plaintiffs $570,000, to be repaid over thirty years. The initial interest rate was 5.625%. Ordinarily, a thirty-year, $570,000 loan at that rate would require monthly payments of $3,281. But, for the first five years, plaintiffs were required to pay only $2,671.88, an amount exactly equal to the monthly interest on the loan. The interest rate stayed the same for the first five years, with the result that on September 1, 2011, plaintiffs would owe the full $570,000 principle. Pursuant to the terms of the loan, in September 2011 and once per year thereafter, the mortgage rate was scheduled to adjust (the terms of the contract permit rates between 2.250% and 10.625%) and, with it, the payment amount. As of September 2011, interest-only payments were no longer acceptable and plaintiffs became responsible for paying interest and principle. At oral argument, the parties agreed that the new, adjusted payment amount would have been about $3,800 per month, an increase of more than forty percent.

In the years before the financial crisis, many people obtained financing for loans like these when it was a stretch for them to afford the early-year payments, much less the increased

---

[1] In their response to the motion for a preliminary injunction, defendants moved to dismiss the complaint. That motion to dismiss remains pending and will be taken under advisement upon the completion of the usual briefing timeline under the Local Rules.

Page 2 – OPINION AND ORDER

payments that kicked in after five years. They agreed to such terms on the assumption (often aggressively encouraged by the broker) that their homes would appreciate in value and they could use that equity to refinance, thereby lowering their payments before the five-year increase happened. Of course, the opposite came to pass; the market crashed and home values plummeted. Many purchasers with adjustable-rate loans found themselves not only without equity but significantly under water on their mortgages.

In June 2012, Ashraf Tadros filed for Chapter 13 bankruptcy. Bank of America filed a proof of claim on behalf of Citibank, to which Countrywide had by then assigned its secured interest in the property. That proof of claim, dated October 2012, listed a secured claim in the amount of $630,443.27 and stated that plaintiffs had last made a payment on the loan in March 2011, leading to a pre-petition default of $87,750.73.

In 2013, Citibank assigned its secured interest in the property to Wilmington. In June 2017, the bankruptcy court granted Specialized Loan Servicing, LLC ("SLS"),[2] as loan servicer for Wilmington, relief from the automatic stay to permit it to foreclose on the deed of trust. In October 2017, plaintiffs filed this lawsuit, alleging—apparently for the first time—that Wilmington lacked authority to foreclose on the deed of trust. Plaintiffs asserted violations of the Internal Revenue Code, the Federal Debt Collection Practices Act ("FDCPA"), the Consumer Act, the Oregon Trust Deed Act ("OTDA"), fraud, unjust enrichment, and violation of the duty of good faith and fair dealing. In addition to money damages, plaintiffs seek to quiet title to their property and ask for a declaratory judgment as to who actually owns the note and deed of trust.

In November 2017, defendant Quality Loan Servicing Corporation filed and recorded a notice of trustee's sale. Although the parties dispute whether they had reached any form of

---

[2] Bank of America, N.A. transferred servicing to SLS as of December 2013.

agreement, it is apparent that settlement offers were exchanged up to the date of the foreclosure sale. When negotiations fell through, the property was sold at auction on March 20, 2018, and plaintiffs filed their motion for a temporary restraining order and preliminary injunction on March 22, 2018.

The parties' dispute focuses on whether Countrywide's transfer of its beneficial interest in the note to Wilmington complied with Oregon law. Plaintiffs' mortgage loan was secured by a deed of trust, which listed Countrywide as the "lender" and Mortgage Electronic Registration Systems, Inc. ("MERS") as Countrywide's "nominee." Wallace Decl. Ex. 2. In their response to the motion for a preliminary injunction, defendants submitted a copy of the promissory note that appears to be endorsed in blank by Michele Sjolander, Executive Vice President of Countrywide Home Loans, Inc. Cynthia Wallace, Second Assistant Vice President for SLS, submitted a declaration stating that she reviewed Wilmington's records and confirmed that it has had a copy of the endorsed-in-blank promissory note in its possession since at least 2013. The record also contains two assignments of the beneficial interest in the note: one, recorded December 19, 2011, assigning the interest to Citibank and a second, recorded June 5, 2017, assigning the interest to Wilmington.

Plaintiffs submitted an expert declaration from William J. Paatalo opining that the endorsement in blank is likely a forgery, and that it was placed on an imaged copy of the promissory note in June 2017 for the sole purpose of seeking relief from the automatic stay. Mr. Paatalo bases that opinion on trial and deposition testimony from other cases in which, he alleges, (1) Bank of America employee Linda DeMartini testified that it was not the practice of Bank of America to endorse Countrywide promissory notes in blank on their face between 2006 and 2009; rather, Ms. DeMartini stated that the company used an allonge (a separate piece of

Page 4 – OPINION AND ORDER

paper) when it needed to endorse a promissory note in blank and (2) Ms. Sjolander, the purported endorsee of the promissory note in this case, testified that she did not perform the endorsements herself (even though they bore her name), she did not know who performed the endorsements, and she did not know when the endorsements were placed on notes.

Plaintiffs further argue that, even if the promissory note was in fact endorsed in blank and was in Wilmington's possession on the date of the trustee's sale, the sale was nonetheless invalid because it did not comply with the Oregon Trust Deed Act, which requires any assignments of the deed of trust by the trustee or the beneficiary to be properly recorded in order for the trustee to conduct a non-judicial foreclosure sale. Or. Rev. Stat. § 86.752(1); *see also Staton v. BAC Home Loans Servicing, L.P.*, 2012 WL 1624296, *4 (D. Or. 2012) ("[A] creditor's failure to strictly comply with the statutory process outlined in the OTDA is fatal to any nonjudicial foreclosure proceeding."). In the recorded assignments, both Citibank and Wilmington are identified as successor trustees to the Bear Stearns ARM Trust, Mortgage Pass-Through Certificates, Series 2006-4. Mr. Paatalo states that the Prospectus and Pooling and Servicing Agreement for that trust is unexecuted and contains no loan schedule that identified plaintiffs' loan as being in the trust pool. He further relies on a research abstract, submitted as an attachment to his declaration, which concludes it is impossible to trace an individual mortgage loan through such trust pools.

## STANDARDS

The Ninth Circuit recognizes two variants of the preliminary injunction standard. Under the traditional formulation, a plaintiff seeking a preliminary injunction must establish (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the plaintiffs favor; and (4) a preliminary

injunction is in the public interest. *Winter v. Nat'l Resources Def. Council*, 555 U.S. 7, 21 (2008). Alternatively, a plaintiff can obtain a preliminary injunction "if there are serious questions going to the merits; there is a likelihood of irreparable injury to the plaintiff; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). A court may not enter a preliminary injunction without first affording the adverse party notice and an opportunity to be heard. Fed. R. Civ. P. 65(a)(1); *People of State of Cal. ex rel. Van De Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1322 (9th Cir. 1985).

## DISCUSSION

Plaintiffs' sole argument for the preliminary injunction is that Wilmington lacked legal authority to foreclose on their property via a non-judicial foreclosure sale. To that end, plaintiffs first contend that the endorsement in blank on the promissory note is a forgery and thus Countrywide never assigned its beneficial interest in the note to Citibank, which in turn could not have assigned that interest to Wilmington. That argument is largely supported by the expert declaration of Mr. Paatalo. Plaintiffs also argue that there is insufficient proof that their loan is a part of the trust to which Wilmington is successor and that the beneficial interest in the plaintiff's mortgage was never properly transferred from Countrywide to Citibank or from Citibank to Wilmington. Defendants contend that the note, which has been in Wilmington's possession since December 2013, was *actually* endorsed in blank by Michele Sjolander, the Executive Vice President of Countrywide, and is not a forgery. Defendants further argue that plaintiffs lack standing to challenge the foreclosure sale under the trust's Pooling and Servicing Agreement all transfers of the beneficial interest in the note were recorded, in compliance with the OTDA.

I. *Paatalo's Expert Declaration*

Plaintiffs submitted the expert declaration of William J. Paatalo in support of their motion. Mr. Paatalo opines that the endorsement in blank on the note is likely a forgery and that is was placed on an imaged copy of the promissory note in June 2017 for the sole purpose of seeking relief from the automatic stay. Defendants argue that Mr. Paatalo's opinion does not meet the requirements for expert testimony under the Federal Rules of Evidence.

> A witness is qualified as an expert if
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine the facts in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the opinion is a product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Expert testimony is admissible only if it "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm,, Inc.*, 509 U.S. 579, 597 (1993). "Pertinent evidence based on scientifically valid principles will satisfy those demands." *Id.* Factors relevant to determining the reliability of an expert's methodology or technique include whether the expert's technique can or has been tested, whether the theory or technique is subject to peer review and publication, the technique's potential error rate, and the technique's acceptance among the relevant scientific community. *Id.* at 593–94.

Mr. Paatalo's testimony is not admissible under Rule 702's requirements. On this point, I am persuaded by the Ohio Court of Appeals' recent decision in *JP Morgan Chase Bank v. Stevens*, 2017 WL 3433106 (Ohio App. Aug. 10, 2017). In that case, which involved facts and

Page 7 – OPINION AND ORDER

legal claims very similar to those at issue here, the Ohio Court of Appeals considered whether a declaration by the same William J. Paatalo was admissible under Ohio's expert testimony standards. *Stevens*, 2017 WL 3433106 at *4. Although the Ohio Rules of Evidence do not govern this matter and a decision by the Ohio Court of Appeals is not binding on this Court, I find the reasoning and decision in *Stevens* persuasive because the requirements for expert testimony under the Ohio Rules of Evidence track the requirements for expert testimony under the Federal Rule of Evidence. *Compare* Fed. R. Evid. 702–05 *with* Ohio R. Evid. 702–05. Like this case, *Stevens* involved a mortgage foreclosure. 2017 WL 3433106 at *1. Plaintiff JP Morgan Chase Bank ("Chase") attached a copy of the note endorsed in blank along with a copy of the assignment to Chase in support of its motion for summary judgement. *Id.* at *7. The plaintiff offered Mr. Paatalo's affidavit, contending that Mr. Paatalo's experience as a mortgage broker and private investigator qualified him to challenge the chain of title and assignment of the mortgage to Chase as fraudulent. *Id.* at *4. The court excluded Mr. Paatalo's testimony because it failed to meet the criteria for expert testimony under the Ohio Rules of Evidence. *Id.* at *5. The court noted that information that Mr. Paatalo relied upon—data publicly available on websites concerning the FDIC's seizure of Washington Mutual, Fannie Mae, and MERS—was information available to the general public and was not subject to reasonable dispute. *Id.* Thus, Mr. Paatalo's opinion was not "based upon any 'scientific, technical, or other specialized information'" as required by the evidentiary rules. *Id.*

Similar to Mr. Paatalo's opinions in *Stevens*, here he opines that the assignment of the mortgage to Wilmington was fraudulent because the endorsement in blank attached to the assignment of the note to Wilmington by Ms. Sjolander is a forgery. In support of his opinion, Mr. Paatalo submits information obtained (1) from websites concerning the Prospectus and PSA

Page 8 – OPINION AND ORDER

for the Bear Stearns ARM Trust 2006-4, (2) from trial and deposition testimony in other cases involving the trustees and entities in this case, and (3) a research abstract concerning the traceability of individual mortgage loans through trust pools. Mr. Paatalo appears to have gathered all this foundational information through searching websites on the internet. Just as in *Stevens*, here Mr. Paatalo purports to rely on information that is available to the general public through public websites and he does not appear to have brought any "scientific, technical, or other specialized knowledge" to bear in reach his conclusions. Fed. R. Evid. 702; *see also Stevens*, 2017 WL 3434106, at *5. Although Mr. Paatalo purports to rely on his "expertise" as a private investigator, his testimony is not necessary to assist the finder of fact in interpreting the documents on which his opinion is based. Mr. Paatalo's investigation is not the type of inquiry contemplated by Rule 702 to be undertaken by experts. *See Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) ("One very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying."). Thus, Mr. Paatalo's declaration is not admissible as an expert declaration in this case. Because Mr. Paatalo's declaration fails the first prong of Rule 702's expert qualification requirements, *Daubert*'s "reliable foundation" and "relevant to the task at hand" inquiries are not necessary.

II.    *Note Endorsed in Blank*

Plaintiffs contend that Wilmington did not have the legal authority to conduct a non-judicial foreclosure sale in this case. Defendants argue that Wilmington has the right to foreclose because Wilmington properly owns the note and the deed of trust that follows the note. Based on

the evidence before the Court, it appears that Wilmington has the right to foreclose on the deed of trust.

Under Oregon law, the holder of the promissory note endorsed in blank generally has the right to foreclose on the deed of trust. *Nationstar Mortg., LLC v. Niday*, 389 P.3d 1176, 1177–78 (Or. Ct. App. 2017). A person entitled to enforce an instrument includes, among others, the holder of the instrument. Or. Rev. Stat. § 73.0301. A "holder' of an instrument includes "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." *Id.* § 71.2010(2)(u)(A). "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." *Id.* § 73.0205(2). "[A] mortgage or deed of trust 'follows' the note that it secures." *Nationstar Mortg., LLC v. Peper*, 377 P.3d 678, 680 (Or. Ct. App. 2016).

In this case, the available evidence tends to show that Wilmington was in possession of the note at the time of the foreclosure auction and that the endorsement was not a forgery. Defendants submitted a copy of a proof of claim filing from bankruptcy court stamped October 18, 2012. Attached to that proof of claim as an exhibit is a copy of the note. The record also contains copies of bankruptcy court filings showing that Citibank transferred its claim to Wilmington (with SLS as servicer) on December 17, 2013. Finally, Cynthia Wallace, a Second Assistant Vice President for Specialized Loan Servicing, LLC, submitted a sworn declaration stating that Wilmington has been in possession of the note, endorsed in blank, since at least 2013. Together, this evidence is strong proof that Wilmington possessed the note at the time of the foreclosure sale.

There is also clear and convincing evidence in the record that the note was endorsed in blank before it was transferred to Citibank or to Wilmington, and that Ms. Sjolander's

Page 10 – OPINION AND ORDER

endorsement is not a forgery. The copy of the note attached to Citibank's proof of claim in the bankruptcy court records contains Ms. Sjolander's endorsement in blank. That demonstrates that the endorsement was on the note by 2012 at the latest, and that, contrary to plaintiffs' suggestion, it was not forged in 2017 to make it appear as though Wilmington had the right to foreclose. Even if Mr. Paatalo's opinion were admissible, neither his conclusions nor the documents he relied upon in making his declaration would change this analysis; Ms. DeMartini's testimony about practices at Countrywide between 2006 and 2009 is not particularly relevant to how a note would have been endorsed in blank in 2011, at the time the beneficial interest in the note transferred to Citibank, and Ms. Sjolander's testimony appears to refer to use of proxies to sign documents, a widespread and generally unobjectionable practice. In sum, the evidence shows that Wilmington possessed the note, legitimately endorsed in blank, at the time of the foreclosure sale.

III. *Pooling and Servicing Agreement*

Plaintiffs further argue that Wilmington cannot be the legal owner of the note under the Pooling and Service Agreement that governs the Bear Stearns trust for which Wilmington is successor trustee. In order to enforce a contract, an individual must be a party or an intended third party beneficiary to the contract. *Parker v. Jeffery*, 37 P. 712, 712 (Or. 1894). Plaintiffs are not parties to or beneficiaries of the Pooling and Service Agreement, thus they cannot challenge the validity of the transfers of beneficial interests to Wilmington on the grounds of violation of that contract. *See, e.g., Deutsche Bank Trust Co. Americas v. Walmsley*, 374 P.3d 937, 941 (Or. Ct. App. 2016) ("Plaintiff's own contractual obligations and privileges under the trust PSAs and the swap agreements have no bearing on plaintiff[']s right to enforce the note through judicial foreclosure as the holder of the note under O[r. Rev. Stat. §] 73.0301.").

IV.  *MERS as Granting Entity*

Plaintiffs challenge the transfer of the beneficial interest in the note to Wilmington on the grounds that MERS cannot be the "granting" entity twice. When an entity with a secured interest in a property wishes to proceed via non-judicial foreclosure, the Oregon Trust Deed Act requires each assignment of the beneficial interest in the note to be recorded in the county where the property is located. Or. Rev. Stat. § 86.752(1). Here, as explained, there are two recorded transfers: from MERS to Citibank (in 2011) and then from MERS to Wilmington (in 2017). It initially seems a little odd that both endorsements are "from" MERS, but it makes sense upon closer examination of the promissory note and MERS' role in the mortgage market. MERS is a member organization composed of lenders; those lenders routinely authorize MERS to act on their behalf with respect to the transfer of interest in loans. *Niday*, 389 P.3d at 1161. Consistent with that practice, under the terms of the trust deed, Countrywide authorized MERS to be its nominee—that is, to act on its behalf. *Id.* at 1167. So MERS had authority to record a transfer of beneficial interest, *on Countrywide's behalf*, to Citibank in 2011. And once that beneficial interest transferred to Citibank, MERS had authority under the promissory note to record a transfer of beneficial interest, *on Citibank's behalf*, to Wilmington in 2017.

Oregon courts have held that a recorded transfer listing MERS as the "beneficiary" does not satisfy the requirements of the Oregon Trust Deed Act because MERS itself has no right to payment and instead acts on behalf of the entity with a right to be paid. *Brandrup v. ReconTrust Co., N.A.*, 303 P.3d 301, 309 (Or. 2013). But nothing in the case law suggests a recorded transfer listing MERS as the *transferor* runs afoul of the statute. That is because the courts'

focus is on whether the *borrower* has fair notice of *who has the right to be paid*. Here, at all times, that was clear: the right to be paid passed from Countrywide to Citibank to Wilmington. So Wilmington, which had possession of the promissory note on March 20, 2018, had authority to foreclose through those duly-recorded assignments.

V. *Effect of the Bankruptcy Court's Order of Relief from Stay*

There is an additional reason that plaintiff Ashrof Tadros cannot challenge the foreclosure sale. Under federal bankruptcy law, a transferor must be immediately notified by mail of the filing of the evidence of transfer. Fed. R. Bankr. P. 3001(e)(2). Objections to transfers of claim in bankruptcy must be filed within 21 days of the mailing of the notice or within any additional time allowed by the court. *Id.* While proofs of claims are not final judgments, a bankruptcy court's allowance or disallowance of a claim is a final judgment. *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 529 (9th Cir. 1998). Failure to object to a claim before its allowance gives it *res judicata* effect. *Id.* at 531.

Here, the transfer of proof of claim filed in December 2013 by SLS, as servicer for Wilmington, contained a copy of the promissory note with the endorsement in blank on it. That notice of transfer of claim was served on plaintiffs on December 19, 2013. Ashraf Tadros, who was represented by counsel in his bankruptcy proceeding did not object to that transfer of proof of claim on any grounds. Furthermore, Ashrof Tadros did not object to the defendant's motion for relief from stay to foreclose on plaintiff's property. *Cf. In re Int'l Nutronics*, 28 F.3d 965, 970 (9th Cir. 1994) ("[A] bankruptcy court's order confirming a sale has preclusive effects."). He offers no explanation for that failure. Because Ashrof Tadros could have challenged the

transfer of claim and request relief from stay on the same grounds underlying his motion for a preliminary injunction, the arguments he now asserts are *res judicata*.[3]

VI. *Application of the Preliminary Injunction Test*

At a minimum, a plaintiff seeking a preliminary injunction must show that there are serious questions going to the merits. *Lopez*, 680 F.3d at 1072. With respect to whether Wilmington had the right to institute nonjudicial foreclosure proceedings—the sole argument raised in plaintiffs' motion—plaintiffs cannot meet that standard. As explained above, plaintiffs cannot show likelihood of success on the merits or serious questions going to the merits because Mr. Paatalo's declaration does not meet the expert testimony requirements of Rule 702, there is insufficient evidence that there was a forgery in 2017, and the evidence shows that Wilmington possessed the note endorsed in blank and that every assignment of beneficial interest in the note was duly recorded prior to the auction.

## CONCLUSION

Plaintiffs' motion for a preliminary injunction (doc. 16) is DENIED.

IT IS SO ORDERED.

Dated this 23rd day of April 2018.

Ann Aiken
United States District Judge

---

[3] The usual claim preclusion rules do not apply to judgments obtained by fraud. *Hannum v. EBI Cos.*, 732 P.2d 29, 31 (Or. Ct. App. 1987). But here, as explained, there is no evidence that the endorsement in blank or any other aspect of the transfers were fraudulent.

Page 14 – OPINION AND ORDER