IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ASHRAF N. TADROS and SHAUN M. TADROS<br><br>Plaintiffs,<br><br>v.<br><br>WILMINGTON TRUST, NATIONAL ASSOCIATION AS SUCCESSOR TRUSTEE TO CITIBANK, N.A.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; BANK OF AMERICA NA; SPECIALIZED LOAN SERVICING, LLC; QUALITY LOAN SERVICING CORPORATION OF WASHINGTON; ROSE CITY VENTURES, INC.; and RAIN CITY CAPITAL OF OREGON, LLC,<br><br>Defendants. | Case No. 3:17-cv-01623-AA<br>**OPINION AND ORDER** |

AIKEN, District Judge:

In this action, plaintiffs Ashraf Tadros and Shaun Tadros assert a variety of claims related to the foreclosure of the loan secured by their residential property. Defendant Wilmington Trust, National Association, as Successor Trustee to Citibank, N.A. as Trustee of Structured Asset Mortgage Investments II Inc., Bear Stearns ARM Trust, Mortgage Pass-Through Certificates,

Page 1 – OPINION AND ORDER

Series 2006-4 ("Wilmington"),[1] now moves to dismiss all plaintiffs' claims. For the reasons set forth below, Wilmington's motion is granted and this action is dismissed. If plaintiffs wish to file an amended complaint, they must file a motion requesting leave to do so within thirty days of the date of this opinion and order.

## BACKGROUND

On August 17, 2006, plaintiffs took out a $570,000 loan from Countrywide Home Loans, Inc. ("Countrywide"), to finance the purchase of real property located at 4671 SW Trail Road in Tualatin, Oregon. Defendant Bank of America, N.A. ("Bank of America"), was Countrywide's loan servicer. The loan was secured by a promissory note and deed of trust. The deed of trust was recorded on August 25, 2006, in Clackamas County, Oregon. Clackamas County records also contain two assignments of the beneficial interest in the deed of trust. The first assignment, to Citibank, N.A. as Trustee for the Holders of the SAMI II Inc. Bear Stearns Trust, Mortgage Pass-Through Certificates, Series 2006-4 ("Citibank"), was executed December 13, 2011 and recorded December 19, 2011. The second assignment, to Wilmington, was executed May 23, 2017 and recorded June 5, 2017.

In June 2012, Ashraf Tadros filed for Chapter 13 bankruptcy. Bank of America filed a proof of claim on behalf of Citibank, dated October 2012, listing a secured claim in the amount of $630,443.27 and stating that plaintiffs had last made a payment on the loan in March 2011, leading to a pre-petition default of $87,750.73. On December 18, 2013, defendant Specialized Loan Servicing, LLC ("SLS"), the loan servicer for Wilmington, filed a transfer of claim in the bankruptcy court stating that Citibank had assigned its beneficial interest in the promissory note

---

[1] Plaintiffs used the shorter name "Wilmington Trust, National Association as Successor Trustee to Citibank, N.A." when naming defendants in this lawsuit; I have used Wilmington's full name as specified in defendants' motions and supporting declarations.

and deed of trust to Wilmington.[2] The next day, SLS served Ashraf Tadros, his attorney, the Chapter 13 Trustee, and the U.S. trustee with notice of the transfer of claim. That notice specified that any objection to the transfer was to be filed within twenty-one days. No one objected.

In June 2017, SLS, on behalf of Wilmington, filed a motion in the bankruptcy court seeking relief from the automatic stay in order to foreclose on the deed of trust. Plaintiffs filed no objection to that motion, and the bankruptcy court granted relief from stay on July 14, 2017. On September 26, 2017, the bankruptcy court entered its order of discharge and closed the bankruptcy case.

Two and a half weeks later, plaintiffs filed this lawsuit, alleging—apparently for the first time—that Wilmington had no beneficial interest in the promissory note or deed of trust. Plaintiffs asserted various claims, including claims under the Internal Revenue Code and the Fair Debt Collection Practices Act. In addition to money damages, plaintiffs sought to quiet title to their property and requested a declaratory judgment as to who actually owned the note and deed of trust.

In November 2017, defendant Quality Loan Servicing Corporation ("Quality") filed and recorded a notice of trustee's sale. Although the parties dispute whether they reached any form of agreement, settlement discussions apparently took place up to the date of the foreclosure sale. When those negotiations fell through, the property was sold at auction to defendant Rose City Ventures, Inc. ("Rose City"), March 20, 2018. Plaintiffs filed a motion for a temporary restraining order and preliminary injunction on March 22, 2018, seeking to prevent Wilmington,

---

[2] Plaintiffs contend that the bankruptcy court filing was fraudulent because Wilmington never had an enforceable, beneficial interest in the promissory note or deed of trust. It is undisputed, however, that SLS filed the transfer of claim asserting that Wilmington had such an interest.

Page 3 – OPINION AND ORDER

SLS, and Quality from transferring title to Rose City. I entered a temporary restraining order on March 23, 2018. Following a hearing and full briefing, however, I determined that plaintiffs had failed to show serious questions going to the merits of their claim that Wilmington Trust lacked authority to foreclose at the time of the sale. I therefore denied the motion for a preliminary injunction. On April 9, 2018, the first business day after the temporary restraining order dissolved, the trustee's deed transferring the property to Rose City was recorded in Clackamas County.

In its response to the motion for a preliminary injunction, Wilmington moved to dismiss all plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6).

## STANDARDS

When considering a motion to dismiss, a court construes a complaint in favor of the plaintiff and takes all factual allegations as true. "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013).

## DISCUSSION

Before proceeding to the merits of the parties' arguments, I first must address the effect of my opinion and order denying plaintiffs' motion for a preliminary injunction, *Tadros v.*

*Wilmington Trust, Nat'l Ass'n*, 2018 WL 1924464 (D. Or. Apr. 23, 2018). In that order, I made factual findings about the evidence submitted by the parties. In its reply in support of the motion to dismiss, Wilmington relies on several of those findings. But I have not taken those factual findings into account in resolving this motion. When a motion to dismiss is filed after a preliminary injunction dispute, the court has two choices. One option is to ignore the evidence in the preliminary injunction record (as well as any findings made on the basis of that evidence) and constrain review to the complaint, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (summarizing the documents a court generally may consider when adjudicating a 12(b)(6) motion). Alternatively, the court may—with notice to the parties—consider the evidence in the preliminary injunction record, thereby converting the motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Here, it is appropriate to take the first approach. Because "haste . . . is often necessary" in deciding whether to grant a preliminary injunction, such relief "is customarily granted [or denied] on the basis of procedures that are less formal and evidence that is less complete then in a trial on the merits[.]" *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Critically, discovery in this case is not yet complete and plaintiffs vigorously contend that Wilmington has refused to turn over relevant evidence; thus, converting the motion to one for summary judgment risks prejudicing plaintiffs, who do not have access to defendants' files. Accordingly, I have considered only the following documents in making this decision: the Corrected Amended Complaint; the deed of trust on the property, first recorded in Clackamas County on August 25,

2006; the first assignment of that deed of trust, recorded in Clackamas County on December 19, 2011; the second assignment of that deed of trust, recorded in Clackamas County on June 5, 2017; and all filings in the bankruptcy proceeding *In re Tadros*, Case No. 12-34441-dwh13 (Bankr. D. Or.). The deed of trust, two assignments, and bankruptcy court filings are all appropriate subjects of judicial notice under Federal Rule of Evidence 201(b)(2). *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."). In addition, the Corrected Amended Complaint incorporates and relies upon the deed of trust and the two assignments.

I. *Res Judicata Effect of the Bankruptcy Court's Orders*

Defendants argue that all plaintiff's claims must be dismissed with prejudice under the doctrine of res judicata. That doctrine, also known as claim preclusion, "bars all grounds for recovery that *could have been asserted*, whether they were or not, in a prior suit between the same parties on the same cause of action." *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 528–29 (9th Cir. 1998) (alterations normalized) (emphasis in original). Res judicata applies to matters decided in bankruptcy. *Id.* at 528. Courts consider four factors to determine whether the cause of action is the same in the current and prior suits:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by the prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of fact.

*Id.* at 529.

In *Siegel*, the secured lender, Freddie Mac, filed two proofs of claim in the debtor's bankruptcy proceeding. *Id.* at 528. The debtor did not object to those proofs of claim; instead, he filed a separate civil suit challenging Freddie Mac's right to foreclose, asserting tort and

contract claims. Freddie Mac moved for summary judgment in the civil suit, arguing that the debtor's failure to timely object to its proofs of claim in the bankruptcy proceeding barred the debtor's claims in the new lawsuit.

The court agreed with Freddie Mac because, under the four-factor test, the causes of action in the bankruptcy proceeding and subsequent action were the same.

> Application of the test indicates that the district court correctly concluded that Siegel's claims were barred by res judicata. Freddie Mac filed two proofs of claim . . . in Siegel's bankruptcy proceeding. No objection was filed to the claims in the bankruptcy action. Siegel's present suit against Freddie Mac in contract and tort states a variety of causes of action[,] all of which are premised on Freddie Mac's . . . violat[ion] of its duties under the notes and deeds of trust . . . . Clearly, Freddie Mac's right to recover on its proofs of claim in the bankruptcy court could have been attacked on that basis. Just as clearly, its rights established in the bankruptcy would be affected by resolution of the present action. Similarly, the present suit and the proofs of claim stem from the same nucleus of facts, and involve similar evidence, *i.e.*, the loan documentation and the surrounding circumstances. Again, the interests at stake in both actions involve Freddie Mac's right to recovery under the loan agreements. As such, the district court correctly concluded that res judicata bars Siegel's claims in the present action.

*Id.* (footnote omitted).

Defendants point to two bankruptcy court orders in support of their res judicata argument. The first is the bankruptcy court's allowance of the transfer of claim from Citibank to Wilmington in January 2014. When a claim is transferred in a bankruptcy proceeding, the transferee must file notice of that transfer with the bankruptcy court; any objections are due within 21 days. Fed. R. Bankr. P. 3001(e)(2). Here, as explained above, in December 2013, SLS filed a transfer of proof of claim, documenting Citibank's transfer of its beneficial interest in the promissory note and deed of trust to Wilmington. In the absence of any objection, the bankruptcy court's allowance of that transfer of claim became a final judgment, to which preclusive effect may attach. *Siegel*, 143 F.3d at 528.

Plaintiffs concede that Ashrof Tadros's bankruptcy counsel "did not properly bring a timely objection to Wilmington's proof of claim[.]" Pls.' Resp. Opp. Def.'s Mot. Dismiss 5. They attempt to get around that failure in two ways. First, they assert that it is "debatable" whether Ashrof Tadros actually received notice of the proof of claim. *Id.* But the bankruptcy court records show that Ashraf Tadros was served with the notice by U.S. mail and that his bankruptcy attorney received notice electronically; an equivocal statement about actual receipt of the notice is insufficient to overcome those records and give rise to a plausible inference that Ashrof Tadros was deprived of proper notice.

Second, plaintiffs contend that Ashrof Tadros did not have a meaningful opportunity to challenge Wilmington's status as a creditor through objecting to the transfer of claim because "the transfer was made late in the bankruptcy process and Mr. Tadros could not consent to something as obscure as a true right to enforce a DEED OF TRUST for purposes of res judicata, that is truly ludicrous." *Id.* I am not convinced. Ashrof Tadros's bankruptcy counsel was, at a minimum, constructively aware that failure to object to the transfer amounted to a forfeiture of certain rights against Wilmington in subsequent proceedings. The fact that this case involves a *transfer* of claim rather than the initial proofs of claim at issue in *Siegel* makes no difference here. Like the debtor in *Siegel*, Ashrof Tadros contends that a secured lender lacked the right to foreclose on his property. Also like the debtor in *Siegel*, Ashrof Tadros had the opportunity to challenge that lender's right to recover in the bankruptcy proceeding but failed to do so. Just as in *Siegel*, the bankruptcy court's order and the subsequent lawsuit stem from the same nucleus of fact and involve similar evidence: here, both center on the validity of assignment of the beneficial interest in the promissory note and deed of trust. Finally, like in *Siegel*, accepting plaintiffs' argument here that the secured lender lacks the right to foreclose would interfere with

rights established in the bankruptcy court's final judgment allowing the transfer of claim. The cause of action in the bankruptcy proceeding and in this case are the same and res judicata applies.

The second relevant bankruptcy order is the order granting SLS, on behalf of Wilmington, relief from the automatic stay for the purpose of foreclosing. Significantly, that motion was for relief from both debtor stay (Ashrof Tadros) and codebtor stay (Shaun Tadros) and was served on *both* plaintiffs. When neither plaintiff objected to the motion within the relevant timeframe, the bankruptcy court granted the requested relief, clearing the way for Wilmington to foreclose. Notice and a copy of that order were sent to both plaintiffs, neither of whom requested relief from judgment. In sum, plaintiffs could have objected—but did not object—to the motion for relief from stay on the grounds that Wilmington had no right to foreclose on the property. Their failure to make that argument before the bankruptcy court gives the bankruptcy court's order granting relief from stay res judicata effect, barring plaintiffs from challenging Wilmington's right to foreclose in this action. *Cf. In re Int'l Nutronics*, 28 F.3d 965, 970 (9th Cir. 1994) ("[A] bankruptcy court's order confirming a sale has preclusive effects.").

Plaintiffs allege that the endorsement in blank on the promissory note in Wilmington's possession is a forgery, placed there in 2017 for the express purpose of legitimatizing an illegal transfer of beneficial interest in the note. The usual claim preclusion rules do not apply to judgments obtained by fraud when the issue of the fraud was not presented to the court in the prior action. *Knauer v. United States*, 328 U.S. 654, 670 (1946). But the bankruptcy court filings in this case show that the promissory note has borne the identical endorsement in blank at least since December 2013, when the note was attached to the transfer of proof of claim. Of course, forgery remains technically *possible* notwithstanding that filing—for example, the

endorsement could have been forged prior to December 2013. But to survive a motion to dismiss, plaintiffs must *plausibly* state a claim for relief. *See Iqbal*, 556 U.S. at 678. Put simply, the "sheer possibility" of forgery—unsupported by any specific factual allegations to lend credence to that possibility—does not deprive the bankruptcy court's judgments of preclusive effect in this action. *Id.*

Finally, plaintiffs cite *Ah Quin v. County of Kauai Department of Transportation*, 733 F.3d 267 (9th Cir. 2013), for the proposition that courts look to a debtor's subjective intent in deciding what effect a bankruptcy court's order should have in a subsequent proceeding. In that case, the debtor told the bankruptcy court that she was not a party to any pending lawsuits, despite the fact that she had filed a pre-petition employment discrimination action. *Ah Quin*, 733 F.3d at 269. Her former employer moved to dismiss the discrimination case on the ground of judicial estoppel. *Id.* at 270. The Ninth Circuit held that there was a live issue of fact as to whether the debtor's misrepresentation was intentional or inadvertent; it therefore declined to apply the doctrine of judicial estoppel to dismiss her civil claim. *Id.* at 271. Plaintiffs contend that, under *Ah Quin*, the doctrine of res judicata here is inapplicable because they wanted to challenge Wilmington's interest in the promissory note and deed of trust back in 2013.

*Ah Quin* is not on point. Leaving aside the fact that claim preclusion and judicial estoppel are different doctrines, here, there is no allegation that plaintiffs attempted to challenge the transfer of claim or motion for relief from stay, but failed to do so due to mistake or inadvertence—for example, because they missed a deadline or checked the wrong box on a form. Rather, plaintiffs suggest—without saying so outright—that they wanted to challenge Wilmington's authority to foreclose from the beginning but were prevented from doing so by Ashrof Tadros's bankruptcy lawyer. Plaintiffs cannot escape the consequences of a tactical call

made by their bankruptcy attorney because they have decided they disagree with that choice in hindsight. *Cf. New York v. Hill*, 528 U.S. 110, 115 (2000). To hold otherwise would undermine the finality of all judicial proceedings by leaving in question the validity of every decision, big or small, an attorney makes.

The res judicata effect of the bankruptcy court's orders dooms most of plaintiffs' claims in this action because it bars plaintiffs from making any claim that depends upon Wilmington's lack of beneficial interest in the promissory note and deed of trust. That contention is essential to plaintiffs' first claim for relief (declaratory judgment of improper transfer of title in violation of 26 U.S.C. § 860G), third claim for relief (violation of the Fair Debt Collection Practices Act), fourth claim for relief (violation of Oregon's Unfair Trade Practices Act),[3] sixth claim for relief (quiet title), and seventh claim for relief (unjust enrichment). Each of those claims is, accordingly, dismissed with prejudice on the ground of claim preclusion.

II. *Remaining Claims*

Plaintiffs' remaining claims each rest, in part, on the argument that Wilmington lacked a beneficial interest in the promissory note on the date of the foreclosure sale. To the extent that is the case, they are barred by claim preclusion. However, the remaining claims also rest on additional, distinct factual allegations. As explained below, those distinct allegations are also insufficient to state a claim for relief.

A. *Fraud/Conversion*

The elements of common law fraud in Oregon are (1) a material misrepresentation that was false; (2) knowledge of falsity; (3) intention to induce reliance; (4) justifiable reliance; and

---

[3] This claim is identified as a "Consumer Protection Act" claim, but no law in Oregon bears that name and the Corrected Amended Complaint appears to refer to California law when it describes the elements of the claim. Because plaintiffs make passing reference to the section of the Oregon statutes devoted to unfair trade practices, I have construed this claim as an Unfair Trade Practices Act claim.

Page 11 – OPINION AND ORDER

(5) damages caused by the reliance. *Strawn v. Farmers Ins. Co. of Or.*, 258 P.3d 1199, 1209 (Or. 2011). A claim for fraud must be pleaded "with particularity" under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 9(b). Rule 9(b)'s particularity requirement demands that allegations of fraud be "specific enough to give defendants notice of the particular misconduct," which means that they "must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

Plaintiffs allege that Wilmington violated Section 17A of the Exchange Act by filing late and inaccurate transfer agent registration forms. Specifically, plaintiffs contend that Wilmington filed a required form four months late, inaccurately listed the name of the entity performing transfer agent services as "Wilmington Savings Fund Society, FSB" rather than as "Wilmington Savings Fund Society, FSB D/B/A Christiana Trust," failed to file a required annual form in 2010, and failed to identify the correct number of individual security-holder accounts for which it maintained master files.

Plaintiffs' fraud claim fails for several reasons. First, filing a form late (or failing to file a form) is not a false representation. Second, plaintiffs have not alleged that Wilmington knew that it provided an incorrect name on the form when it omitted Christiana Trust, knew that it was listing an incorrect number of accounts/master files, or intended to induce reliance on those representations. Finally and most critically, plaintiffs have not pleaded a causal connection between their reliance on the purported misrepresentations listed above and their damages. It may be true that Wilmington sometimes does business under the name Christiana Trust, but it is not plausible that confusion over that name harmed plaintiffs. In bankruptcy court and in the assignment of the deed of trust, the name listed is Wilmington; there is no reference in any documentation or elsewhere in the complaint to Christiana Trust. Similarly, plaintiffs have not

Page 12 – OPINION AND ORDER

alleged how their reliance on Wilmington's failure to accurately list the number of accounts for which it holds the master files caused them harm. Plaintiffs' fraud claim must be dismissed.

B. *Breach of the Covenant of Good Faith and Fair Dealing*

Every contract in Oregon contains an implied duty of good faith and fair dealing. *Swenson v. Legacy Health Sys.*, 9 P.3d 145, 149 (Or. Ct. App. 2000). The heart of each party's good faith and fair dealing obligation is the duty "to perform the contract, including exercising any discretion that the contract provides, in a way that will effectuate the objectively reasonable contractual expectations of the parties." *Pollock v. D.R. Horton, Inc.-Portland*, 77 P.3d 1120, 1127 (Or. Ct. App. 2003).

Most of plaintiffs' allegations in support of this claim are barred by claim preclusion because they go to Wilmington's beneficial interest in the promissory note and right to foreclose. However, plaintiffs also argue that Wilmington set up a system of investors, shareholders, beneficiaries, and alleged owners that was so riddled with misinformation that it impeded plaintiffs' ability to ever reach an effective loss mitigation agreement with the proper party in interest. That allegation is insufficient to state a claim for relief. Per the allegations in the complaint, Wilmington was the foreclosing entity. Plaintiffs do not allege that they negotiated with or made mitigation payments to any entity other than Wilmington or SLS. Indeed, at the preliminary injunction hearing, the parties noted that they had been in negotiations *with one another* up to the time of the sale. Accordingly, it is unclear how the creation of an alleged sham system of investors, shareholders, beneficiaries, and owners constituted a breach of Wilmington's breach of good faith and fair dealing *to plaintiffs*. Plaintiffs' claim for breach of the covenant of good faith and fair dealing is dismissed.

C. *Violations of the Oregon Trust Deed Act*

Plaintiffs' property was sold through a nonjudicial process. Under the Oregon Trust Deed Act, a secured lender may avail itself of nonjudicial foreclosure only if the trust deed and any assignments of that deed are recorded in the county in which the property is located. Or. Rev. Stat. § 86.752(1). Plaintiffs argue that Wilmington (through SLS) lacked authority to proceed with a nonjudicial foreclosure in this case because of various deficiencies in the recorded assignments of the deed of trust. Specifically, plaintiffs note that defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), is listed as the grantor on both the assignment to Citibank and the assignment to Wilmington. Plaintiffs contend that the assignments are invalid because, among other reasons, MERS was inactive on the dates those assignments were recorded and MERS cannot have been the grantor for both assignments.

Plaintiffs are barred from challenging the foreclosure based on those purported deficiencies because they had notice of the sale but did not seek a pre-auction injunction. The OTDA provides that a trustee's sale "forecloses and terminates the interest in the property that belongs to a person to which notice of the sale was given[.]" Or. Rev. Stat. § 86.797(1). It also provides that, once a trustee's deed is recorded, recitations in that deed are *prima facie* evidence of the truth of the matters set forth therein, and conclusive in favor of a purchaser for value in good faith relying upon them. *Id.* § 86.803. Together, those two provisions create an "explicit 'statutory presumption of finality'" following a trustee's sale. *Mikityuk v. Nw. Tr. Servs., Inc.*, 952 F. Supp. 2d 958, 966 (D. Or. 2013) (quoting *Staffordshire Invs., Inc. v. Cal-Western Reconveyance Corp.*, 149 P.3d 150, 158 (Or. Ct. App. 2006)).

In *Wood v. U.S. Bank N.A.*, 831 F.3d 1159 (9th Cir. 2016), the court considered the effect of the OTDA's finality provisions. The court explained that, "[t]o give proper effect to the

Page 14 – OPINION AND ORDER

carefully struck balance between protecting grantors' rights and providing a streamlined process with finality, a post-sale challenge must be based on lack of notice or some other fundamental flaw in the foreclosure proceedings, such as the sale being completed without the borrower actually being in default." *Wood*, 831 F.3d at 1166. In *Wood*, the court held that that the OTDA barred a post-sale challenge based on the trustee's sale notice listing of the wrong beneficiary. That error, the court reasoned, was the sort of "technical defect" that has an insubstantial effect on the grantor's rights and so does not justify upsetting the finality of the trustee's sale. *Id.*

*Wood* is not a perfect match for the facts in this case. Most significantly, the plaintiffs in *Wood* waited *four months* to challenge the nonjudicial foreclosure sale. *Id.* at 1161. Here, plaintiffs sought a temporary restraining order and filed an amended complaint asserting OTDA claims just *two days* after the auction. Ultimately, however, that difference does not change the outcome here. As the *Wood* court explained, the OTDA, a response to the "inefficient" judicial foreclosure process, "represents a well-coordinated statutory scheme to protect grantors from the unauthorized foreclosure and wrongful sale of property, while at the same time providing creditors with a quick and efficient remedy against a defaulting grantor." *Id.* at 1164 (quoting *Staffordshire*, 149 P.3d at 157). The *Wood* court held that permitting post-sale challenges to nonjudicial foreclosure based on failure to comply with "each and every one of the OTDA's technical requirements" would "cast aside th[e] balance" struck by the Oregon Legislature, "stripping the incentive for lenders to accept trust deeds in place of mortgages and gutting the purpose of the OTDA." *Id.* at 1164–65. The court thus drew a distinction between "fundamental flaw[s]" in the sale (such as lack of notice or absence of default) and technical deficiencies in the foreclosure process (such as naming the incorrect beneficiary on the trustee's notice of sale). *Id.* at 1166. Although the court mentioned the length of the plaintiffs' delay to underscore its

decision, the core holding of *Wood* is that technical violations of the OTDA do not justify a post-sale challenge to a nonjudicial foreclosure.

Plaintiffs admit that they were in default at the time of the sale and that they received notice of the sale. Their argument that Wilmington never acquired a beneficial interest in the promissory note—which, if true, would constitute a fundamental flaw in the foreclosure process—is barred by claim preclusion. The purported deficiencies in the recorded assignments, however, are technical violations that cannot be raised post-sale. Plaintiffs' OTDA claims are therefore dismissed with prejudice.

III.     *Leave to Amend*

In their response brief, plaintiffs indicated that they plan to file an amended complaint. Having reviewed the Corrected Amended Complaint and judicially-noticed documents carefully, I am inclined to believe that amendment would be futile. Nevertheless, I will not, at this stage, dismiss this action with prejudice. In particular, I note that the deficiencies in plaintiffs' claims fraud and good faith/fair dealing claims are factual, not legal, so it remains possible that the deficiencies could be cured by amendment. I will therefore give plaintiffs the opportunity to establish that the claims can be saved.

Plaintiffs may file a motion for leave to file an amended complaint within thirty days of the date of this opinion and order. A proposed amended complaint shall be attached to any such motion. In drafting any amended complaint, plaintiffs must bear in mind my holding that they are precluded from arguing that Wilmington lacked a beneficial interest in the note or authority to foreclose at the time of the sale. Plaintiffs shall not serve defendants with any new discovery orders or file any discovery motions (including the motions to compel referenced in plaintiffs' response brief) until I rule on their motion to file an amended complaint. If plaintiffs do not file

a motion for leave to file an amended complaint within thirty days or timely seek an extension of time to file such a motion, this action will be dismissed with prejudice.

## CONCLUSION

Wilmington's motion to dismiss (doc. 29) is GRANTED and plaintiffs' claims are DISMISSED. Plaintiffs' request for oral argument is denied as unnecessary.

IT IS SO ORDERED.

Dated this 15th day of May 2018.

Ann Aiken
United States District Judge